FUJI ELECTRIC CO., LTD., and Fuji Electric Corp. of America, Plaintiffs,

v.

UNITED STATES, Defendant.

Court No. 83-07-00965.

United States Court of International Trade.

July 7, 1988.

Kelley, Drye & Warren, Edward M. Lebow and David R. Busam, Washington, D.C., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Platte B. Moring, III, Office of the Chief Counsel of Intern. Trade, U.S. Dept. of Commerce, Mary Patricia Michel, Washington, D.C., for defendant.

DiCARLO, Judge:

Fuji Electric Co., Ltd. and Fuji Electric Corp. of America (plaintiffs or Fuji) move for judgment on the agency record to challenge the final results of an administrative review of the International Trade Administration of the Department of Commerce (Commerce). Commerce found the rectifier transformer component of Fuji's direct coupled S–Formers to be outside the scope of a dumping finding on large power transformers from Japan, but found the rectifier transformer component of Fuji's close coupled S–Formers to be within the scope of the dumping finding, and thus subject to antidumping duties. *Large Power Transformers From Japan; Final Results of Administrative Review of Antidumping Finding*, 48 Fed.Reg. 26,498 (June 8, 1983). Fuji argues that Commerce also should have found the rectifier transformer component of Fuji's close coupled S–Formers to be outside the scope of the dumping finding.

This Court has jurisdiction under 19 U.S. C. § 1516a(a)(2)(B)(iii) (Supp. IV 1986) and 28 U.S.C. § 1581(c) (1982). The Court finds that Commerce's addition of a "benchmark of manufactured integration" is not according to law. The Court holds that the rectifier transformer components of Fuji's close coupled S–Formers should not be subject to antidumping duties.

## The Merchandise

The equipment is frequently used in the aluminum, chemical, and electro-plating industries. R. 444, 899; Plaintiff's Brief in Support of its Motion for Judgment Upon the Agencies' Record, at 14 ¶ 2. Because of the similarity of technical terms used throughout the administrative records compiled before Treasury and Commerce, and because of the importance of correctly framing the issue before the Court, several agreed definitions and undisputed facts aid the discussion.

A *transformer* is a device which alters incoming and outgoing voltage.

A *rectifier* converts alternating current to direct current.

A *rectifier transformer* is a particular type of transformer used with a rectifier.

A *rectifier-transformer assembly* is a power conversion assembly which performs both rectifier and transformer functions.

A *rectiformer* is another name for a rectifier-transformer assembly.

Fuji manufactures and imports two types of silicon rectifier-transformer assemblies or rectiformers, the direct coupled S–Former and the close coupled S–Former. Both are classifiable as other rectifiers and rectifying apparatus under item 682.60 of the Tariff Schedules of the United States (TSUS).

A *direct coupled S–Former* is a type of rectifier-transformer assembly or rectiformer designed for capacities under 30,-000 amperes. Its cooling system is enclosed in a single cubicle and uses the direct coupled configuration. R. 2614, 3973–74.

A *close coupled S–Former* or compact-assembled S–Former is a type of rectifier-transformer assembly or rectiformer designed for capacities over 30,000 amperes. The rectifier component and the rectifier transformer component must be separately cooled and uses a close coupled configuration. R. 2614, 3973–74.

Both types of Fuji's rectifier-transformer assemblies (the direct coupled and close coupled S–Formers) contain rectifier transformer components, which, if imported alone, would be subject to antidumping duty appraisement under T.D. 72–162.

Because of the relatively large size of the equipment, both types of S–Formers are disassembled for shipment. The rectifier transformer component arrives boxed separately from the rectifier portion, as do a number of the other major components. The S–Former components are shipped together, invoiced together, and entered together. R. 2637.

The Treasury and Commerce Decisions

a. *1972 Treasury Decision*

In March of 1970, Westinghouse Electric Corp. (domestic industry) petitioned the United States Department of the Treasury (Treasury) to investigate whether large

power transformers from Japan and other countries were being sold in the United States at less than fair value. R. 1–437; *Large Power Transformers From Japan: Antidumping Proceeding Notice*, 35 Fed. Reg. 9934 (June 17, 1970). Early in that investigation, Fuji sought to have Treasury exclude its rectifier transformers (both the direct coupled and close coupled S–Formers) from the class or kind of merchandise being investigated, asserting that rectifier transformers do not fall within the category of large power transformers. R. 438–41; 470–80. Fuji explained that "[t]he function of rectifier transformer is to facilitate the conversion from alternating current to direct current to be performed by rectifiers housed in [a] rectifier assembly unit," and that this function "is completely different from the function of power transformers which are used in transmission circuits between generators and [a] consumer's service circuits to step-up or step down the voltage for the purpose of transferring in bulk the electrical energy between different voltages." R. 439. Fuji maintained that rectifier transformers were always used with a rectifier transformer assembly, were "never sold alone but always in combination with rectifier assembly units," and worked only in combination with a particular rectifier unit of special design. R. 440.

Prompted by Fuji's assertions that rectifier transformers were outside the scope of the antidumping proceeding, Treasury amended the antidumping proceeding notice to specifically include rectifier transformers and power rectifier transformers as examples of large power transformers under investigation. *Large Power Transformers From Japan: Antidumping Proceeding Notice*, 36 Fed.Reg. 11,308 (June 11, 1971).

After this amendment was published, Fuji requested a confidential ruling from Treasury that its Silicon Power Rectifier Units be excluded from the scope of the dumping finding because they do not fall within the description of the class or kind of merchandise covered in the antidumping proceeding notice or amended antidumping

proceeding notice on large power transformers from Japan. R. 538–48.

On June 14, 1972, Treasury found dumping with respect to large power transformers from Japan. T.D. 72–162; 6 Customs Bull. 301 (1972); *Antidumping—Large Power Transformers From Japan*, 37 Fed. Reg. 11,773 (June 14, 1972). Large power transformers subject to T.D. 72–162 are classifiable under item 682.07, TSUS.

In a letter dated June 15, 1972, Treasury identified the three major components of the rectifier-transformer assemblies as the rectifier transformer, the silicon diode rectifying elements, and the control panels. R. 576–77. In denying Fuji's request to exclude the rectifier transformer component of rectifier-transformer assemblies from the dumping finding, Treasury's letter concluded that "the rectifier transformer unit of a silicon power rectifier unit [S–Former] does fall within the class or kind of merchandise contemplated by the amended antidumping proceeding notice." R. 576.

b. *1978 Treasury Decision*

In February of 1978, Treasury determined

that combination rectifier-transformer units, commonly known as rectiformers, are not covered by the dumping finding on large power transformers from Japan if the following conditions apply.

1. The entire assembly is imported in the same shipment and entered on the same entry.

2. The assembly has been ordered and invoiced as a unit, without a separate price for the transformer portion of the assembly.

R. 894–95, 901. Appraising officers were directed to ensure through reference to contracts, purchase orders, or other documentation that entered rectiformers have indeed been sold as a unit, rather than as separate components. R. 894. If both conditions were found to exist, then rectiformers were to be appraised without regard to the Antidumping Act. *Id.* Commerce refers to this ruling as the "1978 Treasury Decision" in its 1983 administrative review

results. 48 Fed.Reg. at 26,499. This 1978 Treasury Decision made no distinction between close coupled S–Formers and direct coupled S–Formers.

Prior to the 1978 Treasury Decision, Fuji imported six 50,000 ampere close coupled S–Formers on March 28, 1977, and April 11, 1977. R. 3971, 4000. Apparently guided by the 1978 Treasury Decision, Customs liquidated these close coupled S–Formers without appraisement for antidumping duties. R. 3971, 4000.

### c. *1983 Commerce Administrative Review Results*

After the authority to administer the antidumping laws passed from Treasury to Commerce under the Trade Agreements Act of 1979 and the President's Reorganization Plan No. 3 of 1979, *see Royal Business Machs., Inc. v. United States*, 1 CIT 80, 82–83, 507 F.Supp. 1007, 1010 (1980), *aff'd*, 69 CCPA 61, 669 F.2d 692 (1982); 1979 U.S.Code Cong. & Admin.News 3396, 3398, Commerce reviewed large power transformers rated 10,000 KVA (kilovolt-amperes) or above, by whatever name designated, used to generate, transmit, and utilize electric power. 48 Fed.Reg. at 26,-498. In its final administrative review results, Commerce found that the rectifier transformer component of Fuji's close coupled S–Former is within the scope of Treasury's antidumping finding, stating that the 1978 Treasury Decision pertains only to rectiformers which satisfy a "benchmark of manufactured integration." *Id.* at 26,-499.

### Discussion

■ The administrative record shows Treasury included the rectifier transformer component of a rectifier-transformer assembly in the scope of the 1972 dumping finding. When Fuji attempted to have Treasury remove the rectifier transformers from the class or kind of merchandise investigated, R. 438–51, 470–80, Treasury amended its antidumping proceeding notice to define large power transformers as "including but not limited to ... rectifier-transformers, and power rectifier transformers." R. 490–94; 36 Fed.Reg. at 11,-308. In its letter to Fuji on the day after publishing T.D. 72–162, Treasury wrote that Fuji's rectifier transformers were within the class or kind of merchandise within the scope of the dumping finding. R. 576.

Although the record supports a finding that Treasury specifically included Fuji's rectifier transformers within the 1972 antidumping finding, the record also shows that the close coupled S–Formers and direct coupled S–Formers within the scope of the 1972 finding were removed from its coverage by the 1978 Treasury Decision.

To fall within the purview of the 1978 Treasury Decision, the articles must be combination rectifier-transformer units, the entire assembly must be imported in the same shipment, the entire assembly must be entered on the same entry, the assembly must be ordered as a unit, and the assembly must be invoiced as a unit, without a separate price for the transformer portion. R. 894.

The record shows that Fuji's close coupled S–Formers contain a rectifier component and a transformer component. R. 719. The machines are imported in the same shipment and covered on the same entry. R. 541, 719. Purchasers order Fuji's close coupled S–Formers as a unit, and Fuji bills its customers for the unit. No separate price for the rectifier transformer is ever demanded or quoted. R. 719–20.

Defendant does not dispute any of these facts. The Court finds that the rectifier transformer components of close coupled S–Formers, as imported, fit within the express language of the 1978 Treasury Decision.

■ In its final administrative review results, Commerce determined that the close coupled S–Formers were subject to antidumping duties but that direct coupled S–Formers were not subject to antidumping duties. The record offers no support for this distinction. The 1978 Treasury Decision did not distinguish between close coupled S–Formers and direct coupled S–Formers, but rather required all rectifier

transformer assemblies to be imported in the same shipment, entered on the same entry, ordered as a unit, and invoiced as a unit without a separate price for the transformer portion of the assembly.

In the defining the scope of its administrative review, Commerce stated that the review did not include "combination rectifier transformer units, commonly known as rectiformers, if the entire *integrated* assembly is imported in the same shipment and entered on the same entry, and the assembly has been ordered and invoiced as a unit, without a separate price for the transformer portion of the assembly." 48 Fed.Reg. at 26,498 (emphasis added). Additionally, Commerce established a "benchmark of manufactured integration" in its final administrative review results. *Id.* at 26,499. Commerce stated:

> Merchandise referred to as "rectiformers", such as the direct coupled S–Former, is not within the scope of the finding. These units, which contain both rectifier and transformer functions, have such a degree of manufactured integration that [Commerce] considers them one inseparable amalgam. We maintain that the 1978 Treasury decision only pertains to rectiformers that have achieved that degree of manufactured integration....

> Units such as the close coupled S–Former do not meet [Commerce's] benchmark of manufactured integration.

*Id.*

Congress has limited Commerce's administrative reviews under section 751 of the Tariff Act of 1930, as added by section 101 of the Trade Agreements Act of 1979, 19 U.S.C. § 1675 (1982 & Supp. IV 1986), to the scope of the underlying finding. The Court will accept Commerce's determinations in a section 751 review if the administrative findings are supported by substantial evidence from the record and are not contrary to law. 19 U.S.C. § 1516a(b)(1)(B) (1982).

■ Although Commerce may clarify the scope of a prior dumping finding during a section 751 review, *Kyowa Gas Chem. Indus. Co. v. United States*, 7 CIT 138, 140,

582 F.Supp. 887, 889 (1984); *Diversified Prods. Corp. v. United States*, 6 CIT 155, 159, 572 F.Supp. 883, 887 (1983), Commerce cannot change the scope of an underlying dumping determination when Treasury has specifically included or excluded an article. *See Alsthom Atlantique v. United States*, 4 Fed.Cir. (T) 71, 78, 787 F.2d 565, 571 (1986). As stated in *Royal Business Machs., Inc. v. United States*, 1 CIT 80, 87, 507 F.Supp. 1007, 1014 (1980), *aff'd*, 69 CCPA 61, 669 F.2d 692 (1982), "[e]ach stage of the statutory proceedings maintains the scope passed on from the previous stage."

■ Treasury did not establish a "benchmark of manufactured integration" nor require any degree of manufactured integration to be considered as a factor in deciding whether antidumping duties are to be assessed. Commerce's addition of a "benchmark of manufactured integration" and subtle inclusion of the word "integrated" exceed the scope of Treasury's decisions in 1972 and 1978. The record does not support a distinction between direct coupled and close coupled S–Formers for purposes of assessing antidumping duties to explain why Commerce could find that the direct coupled S–Formers were within the scope of the 1978 Treasury decision while not finding that close coupled S–Formers were also covered by the decision. To the contrary, the record shows Fuji's close coupled S–Formers were among the very machines before Customs when Treasury rendered its 1978 decision which set forth the elements that defendant does not dispute are present. R. 3971.

The Court finds Commerce's addition of a "benchmark of manufactured integration" is not according to law. The Court accordingly does not reach plaintiffs' further arguments that the doctrine of entireties requires the transformer component of the close coupled S–Formers be excluded from the antidumping finding, or that Commerce acted beyond the scope of its statutory authority in ordering Fuji to reconstruct its United States prices.

### Conclusion

The Court finds the challenged portion of Commerce's final administrative review is not according to law, and grants plaintiffs' motion for judgment on the record.

### JUDGMENT

This case having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision, now, in conformity with that decision,

HEREBY ORDERS the United States Customs Service to terminate its suspension of liquidation of the close coupled silicon power rectifier units (S–Formers) manufactured by Fuji Electric Co., Ltd. and imported by Fuji Electric Corp. of America reviewed in *Large Power Transformers From Japan: Final Results of Administrative Review of Antidumping Finding,* 48 Fed.Reg. 26,498, 26,499 (June 8, 1983), and liquidate the transformer components of the close coupled S–Formers without assessment for antidumping duties.