**RHONE POULENC, INC., and Rhone Poulenc Chimie de Base S.A., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**PQ Corporation, Defendant–Intervenor.**

Court No. 88–03–00198.

United States Court of International Trade.

March 21, 1989.

Donohue and Donohue and James A. Geraghty, for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Washington, D.C., M. Martha Ries, Office of the Chief Counsel for Intern. Trade, U.S. Dept. of Commerce, and Craig L. Jackson, for defendant.

Sosnov & Sosnov and Steven R. Sosnov, Norristown, Pa., for defendant-intervenor.

DiCARLO, Judge:

Pursuant to Rule 56.1 of the Rules of this Court, Rhone Poulenc, Inc. and Rhone Poulenc Chimie de Base, S.A. (plaintiffs) challenge the final determination under 19 U.S.C. § 1675(a) (1982 & Supp. IV 1986) of the International Trade Administration of the United States Department of Commerce (Commerce) in the 1984 administrative review of the antidumping duty order entered on anhydrous sodium metasilicate (ASM) from France. *Anhydrous Sodium Metasilicate From France; Final Results of Antidumping Duty Administrative Review*, 53 Fed.Reg. 4195 (Feb. 12, 1988).

The Court has jurisdiction under 28 U.S.C. § 1581(c) (1982). The Court finds that Commerce may require respondents who maintain their relevant business information in a computerized data base to make their submissions on computer tape, and that Commerce may apply the best

information otherwise available when a respondent refuses to supply information in the requested form and where the information provided is deficient. The Court holds that where the most recent information is based on only a small number of sales or is otherwise not representative, the best information otherwise available may not necessarily be the most recent data available. The Court also finds that the plaintiffs did not raise timely objections to Commerce's failure to adjust the dumping margin to reflect fluctuations in the interest rate and exchange rate of the French franc.

## BACKGROUND

Plaintiffs are the sole French producer and importer of ASM, a sodium silicate compound sold in a variety of grades for use in waste paper de-inking, cleaning processes, bleach stabilization or floatation, and clay processing. R. 12 at 4.

Commerce found that French ASM was being sold in the United States at a less than fair value sales margin of 60 percent, and the United States International Trade Commission found material injury to a domestic industry by reason of the dumped imports. *Anhydrous Sodium Metasilicate From France; Antidumping Duty Order,* 46 Fed.Reg. 1667 (Jan. 7, 1981). Over the course of the first four administrative reviews of the antidumping duty order, Commerce found only two shipments of French ASM between November 1, 1980 and December 31, 1983, which it determined were not sold at less than fair value. *Anhydrous Sodium Metasilicate From France; Final Results of Administrative Review of Antidumping Duty Order,* 49 Fed.Reg. 43,733 (Oct. 31, 1984); *Anhydrous Sodium Metasilicate From France; Final Results of Antidumping Duty Administrative Review,* 53 Fed.Reg. 4195 (Feb. 12, 1988). In the administrative review covering 1984 (1984 review), Commerce applied, as the best information otherwise available, the 60 percent dumping margin from the original investigation in 1980, after rejecting plaintiffs' submissions as inadequate and for being in a format other than that requested. The review covering 1985 is the subject of a separate action.

## DISCUSSION

Plaintiffs assert Commerce's final determination in the 1984 review was contrary to law because (1) Commerce abused its discretion in rejecting plaintiffs' submission *in toto* and applying the best information otherwise available rule as a punitive measure, (2) Commerce lacks authority to require that respondents submit information on computer tape, (3) assuming plaintiff's submission was deficient, Commerce should have used the data from the most recent administrative reviews as the best information otherwise available rather than only the 1980 data, and (4) Commerce did not adjust the dumping margin to reflect fluctuations in the exchange rate of the French franc and interest rates between 1980 and 1984.

In reviewing challenges to administrative reviews, the Court is to sustain Commerce's determination unless it is found to be "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982); *Matsushita Elec. Indus. Co. v. United States,* 750 F.2d 927, 933 (Fed.Cir. 1984); *Fuji Elec. Co. v. United States,* 12 CIT ——, 689 F.Supp. 1217, 1221 (1988).

## A. BEST INFORMATION OTHERWISE AVAILABLE

■ In reaching its determination, Commerce rejected plaintiffs' entire submission and used the dumping margin from the original antidumping investigation as the best information otherwise available because plaintiffs' submission was not in the required format and plaintiffs did not provide certain requested data.

Plaintiffs contend that they cooperated fully with Commerce and submitted complete data sufficient to cover every element necessary for a less than fair value calculation. Accordingly, plaintiffs argue Commerce improperly rejected their submission and applied the best information rule against them.

In making its determination in an antidumping investigation, Commerce is direct-

ed to use the "best information otherwise available" "whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation...." 19 U.S.C. § 1677e(b) (1982). *See Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1560 (Fed.Cir.1984); *U.H.F.C. Co. v. United States*, 13 CIT ——, 706 F.Supp. 914, 922 (1989).

The first reason Commerce stated for rejecting plaintiffs' submissions is that transaction data were not on computer tape as Commerce had requested several times. Plaintiffs counter that because Commerce's regulations mention only written submissions, Commerce may not require respondents to submit their data on computer tape.

19 C.F.R. § 353.46(a)(2) (1988) covers submissions in Commerce investigations. While the regulation details procedures to be utilized only as to document submissions, it does not limit submissions to this form alone. Therefore, there is no conflict between the regulation and the additional requirement.

Commerce changed its submission format policy to facilitate the complex analysis necessary to make a determination. The court has already recognized that the complexity of antidumping investigations may necessitate use of computer tapes. *See, e.g., American Brass v. United States*, 12 CIT ——, 699 F.Supp. 934, 937 (1988); *Timken Co. v. United States*, 11 CIT ——, 659 F.Supp. 239, 242 (1987). Considering the complexity of antidumping investigations and administrative reviews of antidumping duty orders, it is not unreasonable for Commerce to insist that those respondents who maintain a computerized data base for their business data submit the information requested in a form that would facilitate Commerce's investigation, unless it would be an unreasonable burden to produce the information on computer tape.

Commerce gave plaintiffs instructions on how to (a) submit computer tapes in a form compatible with Commerce's computer system, and (b) provide documentation of the contents and location of data on the tapes. R. 4, Appendix III. Commerce informed plaintiffs that failure to provide the information as requested would subject them to the best information otherwise available rule. R. 4, General Instructions, at 1. Plaintiffs admit that they maintain the information sought in a computerized data base. Rather than submit computer tapes or request an exemption from the requirement, plaintiffs stated only that their computer software "does not permit retrieval in a form or manner suitable for antidumping margin analyses." R. 15 at 4. Plaintiffs also admit that the data they submitted "might not have been in the most convenient to use format for purposes of an antidumping analysis...." *Plaintiffs' Brief in Support of Motion for Summary Judgment*, at 7.

■ Commerce also rejected plaintiffs' submission because (1) home market sales dates were not provided, (2) United States selling expenses were not adequately identified or quantified, (3) home-market selling expenses were not specific, and (4) documentation of plaintiffs' packing and inland freight costs was insufficient.

Plaintiffs argue that missing home-market sales dates is a "bogus issue" because Commerce could have chosen whatever operative date it wished as the date of sale. In this case, plaintiffs argue that home market sales dates are the same as the shipment dates stated in their submission. *Plaintiffs' Brief in Support of Motion for Summary Judgment*, at 6–7. The only reference in plaintiffs' submission pertaining to a home-market sale is a column entitled DATEXP, which is defined as the date of shipment. Conf. R. 3, Section B.

Commerce counters that determining the date of sale is not simply a matter of picking any date as plaintiffs suggest, but requires much more explanatory information than plaintiffs supplied. The date of sale is an important factor in an administrative review of an antidumping duty order because it allows Commerce to match the home-market sale with the United States sale in order to compare prices with-

in the proper review period. There is no indication whether the sales contracts in question were entered into before or at the time of shipment. Commerce found that plaintiffs' submission does not provide any information to determine whether the date of shipment is the date on which the sale was actually made.

As justification for not providing more detailed information on sales dates in the 1984 review, plaintiffs cite a document contained in the record of the 1985 administrative review of the ASM antidumping duty order. Judicial review of an administrative review of an antidumping duty order is confined to information contained in the administrative record. 19 U.S.C. § 1516a(b) (1982). Plaintiffs generally may not supplement the record before the Court with information contained in the record of a separate administrative review arising out of the same antidumping duty order. *Beker Indus. Corp. v. United States,* 7 CIT 313, 317, 1984 WL 3727 (1984); *see also Bethlehem Steel Corp. v. United States,* 5 CIT 236, 236, 566 F.Supp. 346, 347 (1983); *PPG Indus., Inc. v. United States,* 5 CIT 282, 284, 1983 WL 4978 (1983); *Melamine Chem. Inc. v. United States,* 2 CIT 113, 116, 1981 WL 2484 (1981); *Nakajima All Co. v. United States,* 2 CIT 25, 26, 1981 WL 2478 (1981).

Contrary to Commerce's allegation that United States selling expenses were not adequately identified or quantified, plaintiffs contend that their United States selling expense information was "as specific as it is possible to be." *Plaintiffs' Memorandum in Support of Motion for Judgment on Agency Record* at 7. The record shows, however, that (1) plaintiffs' data were enumerated as "operating expenses for various chemicals" with no specification whether these expenses were for ASM or other chemicals sold in the United States; (2) plaintiffs provided no detail on their distribution, selling, advertising, technical and development, or general and administrative expenses which would allow Commerce to determine whether the referenced expenses were direct or indirect expenses; and (3) plaintiffs provided no worksheet as requested on how the amounts of each direct or indirect expense were calculated. Conf. R. 2; R. 4, General Instructions, at 1.

Plaintiffs also dispute Commerce's claim that their home-market selling expenses were not specific. Plaintiffs claim the that the expenses are listed in their RN 15 statement contained in the record. Conf.R. 3. Plaintiffs' RN 15 statement is, however, in French without the benefit of an English translation. Moreover, plaintiffs' supplemental profit and loss statements allegedly detailing indirect selling expenses were also in French with only the subheadings in the vertical but not horizontal columns translated into English. Conf.R. 2. Commerce's regulations require that all responses to requests for information must be in English, and failure to do so may subject the respondent to the best information otherwise available rule. 19 C.F.R. § 353.51(d) (1988). *See also* H.R.Doc. No. 153 Part II, 96th Cong., 1st Sess. 435, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 665, 700 (statements of administrative action providing that "the Authority may require English language translations of all material documents"). Additionally, the figures in the RN 15 statement are annual averages and there is no supporting documentation on how these averages were calculated. Conf.R. 3. Commerce states that average figures are insufficiently specific to permit comparison of home market and United States sales on a sale-by-sale basis. Plaintiffs also did not explain what constitutes a commercial or technical expense or how the selling expenses were allocated to sales of ASM.

The record supports Commerce's conclusion that the information was, for the most part, in French with no English translation, that provision of an average figure for claimed home market selling expenses was inadequate, and that there was no explanation of the method of allocation. Moreover, although Commerce had granted plaintiffs an extension of time until January 16, 1987 to file their submission, plaintiffs did not provide their home-market sales information until May 13, 1987.

Finally, as to their alleged failure to substantiate packing and inland freight costs, plaintiffs counter that there is more than one way to allocate these costs and that Commerce had the discretion to use any appropriate methodology. In their submission, plaintiffs reported an average inland freight and packing expense despite its statement that the packing expense differed on a sale by sale basis depending on how the merchandise was packaged.

Plaintiffs concede that their packing differs on a per-sale basis. Nevertheless, plaintiffs did not submit information on each sale in order to substantiate this claim, but provided an unsubstantiated average figure derived from its RN 15 statement. Not only was this statement in French, but Commerce states that the average figure did not permit it to compare home market and United States sales accurately on a sale-by-sale basis. Nor is there any explanation on how the packing costs vary when ASM is sold in bulk rather than in bags.

The record supports Commerce's claim that it had difficulty in ascertaining the validity of plaintiffs' claimed expenses, and on the basis of the data submitted, it was unable to make a choice of methodology. The record shows that plaintiffs' submission was not in the form required by Commerce, and it provides sufficient evidence that the submission was unresponsive and deficient. The statute permits Commerce to use the best information rule when a respondent does not timely produce the information requested in the form required. 19 U.S.C. § 1677e(b) (1982); *Atlantic Sugar*, 744 F.2d at 1560; *Hercules, Inc. v. United States*, 11 CIT ——, 673 F.Supp. 454, 471 (1987).

■ Plaintiffs argue that Commerce should not have rejected their submission *in toto* but should have applied the best information rule as to only missing information. In employing the best information available rule against an uncooperative respondent, Commerce may "disregard information submitted by the party for the relevant period and use information, pursuant to [19 U.S.C.] § 1677e(b), which may actual-ly be less accurate, if it is the best information otherwise available." *Uddeholm Corp. v. United States*, 11 CIT ——, 676 F.Supp. 1234, 1236 (1987); *see also Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 406, 636 F.Supp. 961, 967, *aff'd*, 810 F.2d 1137 (1986) (upholding Commerce's rejection of information submitted in an administrative review of a countervailing duty order, even though some of the information had not been proven inaccurate).

The Court is unpersuaded by plaintiffs' argument for the adoption of a rule prohibiting Commerce from rejecting any submission that is "substantially complete." Such a substantiality test might place control of the results of an administrative review in the hands of respondents by permitting them selectively to provide information requested. *See Pistachio Group of the Ass'n of Food Indus. v. United States*, 11 CIT ——, 671 F.Supp. 31, 40 (1987). Commerce's rejection of plaintiffs' submission and use of the best information otherwise available rule is supported by the administrative record and is in accordance with law.

## B. MOST RECENT DATA

Plaintiffs also argue that, even if Commerce was justified in using the best information available rule in the 1984 review, the data used from the original investigation in 1980, and specifically the dumping margin, were stale and not the best information available. Plaintiffs assert that if their responses are deficient in some respect, Commerce must use the data from the two most recent administrative reviews as the most up-to-date information available.

■ Plaintiffs' arguments are unpersuasive. Once Commerce has exercised its discretion to use the best information available rule against a respondent, it is for Commerce, not the respondent, to determine what is the best information. *Ansaldo Componenti S.p.A. v. United States*, 10 CIT 28, 37, 628 F.Supp. 198, 205 (1986). There is no mention in the statute or regulations that the best information available

is the most recent information collected. *See* 19 U.S.C. § 1677e(b) (1982); 19 C.F.R. § 353.51 (1988).

■ Plaintiffs' argue that according to *Freeport Minerals Co. v. United States*, 776 F.2d 1029 (Fed.Cir.1985), and *Timken Co. v. United States*, 10 CIT 86, 92, 630 F.Supp. 1327, 1333 (1986), Commerce must use the most recent information available. Both *Freeport Minerals* and *Timken* involved the question of what periods Commerce should review in considering requests to revoke outstanding antidumping duty orders. In this case, Commerce reviewed the relevant period and used the best information rule when plaintiffs failed to submit sufficient information pertaining to the relevant period. The concern in revocation cases is distinct from that in best information cases where a respondent has not provided adequate information. In best information cases the question is what is the best information available, not what is the most recent. Thus, where the most recent data is based on only a small number of sales or is otherwise not representative data, there is no requirement that Commerce always use information from the most recent administrative reviews as the best information available. *See Ansaldo Componeti*, 10 CIT at 38, 628 F.Supp. at 206 (upholding Commerce's use of information from the original less than fair value investigation as the best information available in an administrative review).

■ The Court also rejects plaintiffs' arguments for the additional reason that the best information rule is designed to prevent a respondent from controlling the results of an administrative review by providing partial information or by delaying or hindering the review. *See Pistachio Group of the Ass'n of Food Indus. v. United States*, 11 CIT ——, 671 F.Supp. 31, 40 (1987). The best information rule may be used as a means to ensure full cooperation from a recalcitrant respondent. *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1560 (Fed.Cir.1984). Commerce rejected the information gathered in the previous two reviews because to use it would reward plaintiffs for their lack of cooperation by erasing a 60 percent dumping margin on the basis of one sale over a two-year period. To force Commerce to use the data from the later reviews instead of the data from the original investigation might hinder Commerce in obtaining full cooperation by parties in an investigation and might place control of the investigation in the hands of uncooperative respondents who could force Commerce to use possibly unrepresentative information most beneficial to them.

Commerce's use of the 1980 dumping margin is also consistent with prior administrative practice. Commerce's position on use of the best information rule is that:

Unless the facts of a case indicate otherwise, the Department generally uses for best information available for a non-responsive firm the higher of (1) that firm's prior rate, or (2) the highest rate for any responsive firm during the period of review. Thus ... there is an incentive for a firm with an initial low rate to cooperate in future antidumping annual reviews.

*Final Results of Antidumping Duty Administrative Review; Neoprene Laminate from Japan*, 52 Fed.Reg. 36,295 (Sept. 28, 1987); *see also Portable Electric Typewriters from Japan*, 53 Fed.Reg. 20,353, 20,354 (June 3, 1988). Commerce has also stated that "[n]owhere in the statute or regulations does it state that the Department must rely upon the 'most recently lawfully determined margin' for a firm ... in a subsequent review." *Malleable Cast-Iron Pipe Fittings, Other than Grooved, from Taiwan; Final Results of Antidumping Duty Administrative Review*, 53 Fed.Reg. 16,179, 16,180 (May 5, 1988). These views are consistent with the use of the best information available rule under 19 U.S.C. § 1677e(b) to elicit the fullest cooperation from parties in an investigation by Commerce.

Commerce's use of the data from the original antidumping investigation rather than the data from the previous administrative reviews is supported by the administrative record and is according to law.

## C. DUMPING MARGIN ADJUSTMENTS

 To compare prices in the home market and the United States market in 1984, Commerce converted the home market data into dollars at the 1980 rate of exchange. Commerce also did not consider interest rate changes over the intervening period. Plaintiffs claim Commerce should have adjusted the dumping margin in the 1984 review to account for fluctuations in the interest rate and exchange rate of the French franc since entry of the original antidumping order. Commerce counters that plaintiffs failed to raise this issue during the administrative proceedings.

Plaintiffs had the opportunity to raise these points in their comments on Commerce's preliminary results in the review, but for "tactical" reasons failed to do so. R. 15. Administrative exhaustion of remedies is generally required before a litigant will be allowed to raise a claim via a civil action. *See* 28 U.S.C. § 2637(d) (1982); *Sharp Corp. v. United States,* 837 F.2d 1058 (Fed.Cir.1988); *Alhambra Foundry Co. v. United States,* 12 CIT ——, 685 F.Supp. 1252, 1256 (1988); Cameron & Polino, *The Impact of the Court on ITA Policies and Procedures—Too Much or Too Little?,* 10 B.C. Int'l & Comp.L.Rev. 241, 242–50 (1987) (application of the doctrine of exhaustion of remedies in the Court of International Trade). "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *United States v. L.A. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *see Unemployment Compensation Comm'n of Alaska v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946); *Kokusai Elec. Co. v. United States,* 10 CIT 166, 171, 632 F.Supp. 23, 29 (1986).

Plaintiffs have not provided a sufficient reason for not raising the issue at the administrative level. There being no mistake or oversight by any of the parties nor any exceptions to the exhaustion doctrine that apply here, the Court finds that plaintiffs have failed to exhaust their administrative remedies and should be precluded from raising for the first time in this Court the issue of whether Commerce should have adjusted the dumping margin for fluctuations in the interest rate and exchange rate of the French franc.

## CONCLUSION

Commerce's determination in the 1984 administrative review of the antidumping duty order entered on ASM from France is supported by substantial evidence on the record and is in accordance with law. This action is dismissed.