**ALLIED–SIGNAL AEROSPACE COMPANY, Garrett Engine Division and Garrett Auxiliary Power Division, Plaintiff,**

v.

**UNITED STATES, Defendant,**

**The Torrington Company, Defendant–Intervenor,**

**Federal–Mogul Corporation, Defendant–Intervenor.**

**Court No. 91–08–00571.**

United States Court of International Trade.

Sept. 17, 1992.

**464**

Adduci, Mastriani, Meeks & Schill, Louis S. Mastriani and Gregory C. Anthes, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Velta A. Melnbrencis), of counsel John D. McInerney, Sr. Counsel, and Craig R. Giesze, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, Wesley K. Caine and Robert A. Weaver, Washington, D.C., for Torrington Co.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley and Joseph A. Perna, V, Washington, D.C., for Federal–Mogul Corp.

## OPINION

TSOUCALAS, Judge:

Pursuant to Rule 56.1 of the Rules of this Court, plaintiff, Allied–Signal Aerospace Company, Garrett Engine Division and Garrett Auxiliary Power Division ("Allied–Signal"), moves for an order granting judgment on the agency record. Allied–Signal is an importer of bearings manufactured by SNFA Bearings, Ltd. ("SNFA"). This motion challenges the final administrative determination of the Department of Commerce, International Trade Administration ("Commerce" or "ITA") for antifriction bearings from France. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Final Results of Antidumping Duty Administrative Reviews* ("Final Results"), 56 Fed.Reg. 31,748 (1991).

## BACKGROUND

In May 1989, the ITA published *Final Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France* ("LTFV determination"), 54 Fed.Reg. 19,092 (1989). In this LTFV determination, the ITA assigned antidumping duty margins to French companies that exported antifriction bearings including SNFA.

In May 1990, the ITA published a notice of an opportunity to request administrative reviews of the antidumping orders on antifriction bearings. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 55 Fed. Reg. 19,093 (1990). In June 1990, the ITA initiated reviews of the antidumping duty orders on antifriction bearings from France, including plaintiff's imports. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews*, 55 Fed.Reg. 23,575 (1990).

The final results of the administrative review at issue were published in July 1991. *Final Results*, 56 Fed.Reg. at 31,-748. In the Final Results, the ITA resorted to best information available and selected the highest dumping margins of any company from the LTFV determination. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review* ("Issues Appendix"), 56 Fed.Reg. 31,692, 31,705 (1991). These dumping margins were 66.42% for ball bearings and 18.37% for cylindrical roller bearings. *Final Results*, 56 Fed.Reg. at 31,750. Plaintiff claims that Commerce "punitively" applied as best information available the highest dumping rates from

the LTFV determination, rather than rates from the current administrative review. Commerce, however, claims that its decision was reasonable since plaintiff offered no evidence indicating that recent margins were more probative of current market conditions than the other companies' dumping rates from the less than fair value investigation. Oral argument was heard by this Court on September 15, 1992.

## DISCUSSION

■ Pursuant to the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(b)(1)(B) (1988 & 1992 Supp.), in reviewing a final ITA determination, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

*Best Information Available*

■ It is firmly established that "whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, [the ITA shall] use the best information otherwise available." *See* 19 U.S.C. § 1677e(c) (1992 Supp.);[1] *see also Tehnoimportexport v. United States*, 15 CIT ——, ——, 766 F.Supp. 1169, 1176 (1991); *N.A.R., S.p.A. v. United States*, 14 CIT ——, ——, 741 F.Supp. 936, 941 (1990).

In the case at hand, Commerce resorted to best information available to calculate dumping margins because SNFA provided inadequate responses to Commerce's questionnaire. Plaintiff, Allied–Signal, does not contest Commerce's use of the best information available rule. It does, however, contest Commerce's selection of best infor-

mation available. Plaintiff argues that in its determination Commerce punitively used the highest margins of other companies' dumping rates from the LTFV determination, rather than rates from the current administrative review.

Defendant, and defendant-intervenors, Federal–Mogul Corporation ("Federal–Mogul") and The Torrington Company ("Torrington"), each claim that Commerce's decision was reasonably within its broad discretion in selecting the best information available. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Administrative Record* at 9–10; *Opposition of Defendant–Intervenor, The Torrington Company, to Plaintiff's Motion for Judgment Upon an Agency Record* at 6–8; *Opposition of Defendant–Intervenor Federal–Mogul Corporation to Plaintiff's Motion for Judgment Upon an Agency Record* at 3–4.

■ The best information available provision is indeed broadly written and is intended to grant Commerce considerable discretion in determining what constitutes the best information available. *Tai Yang Metal Indus. Co. v. United States*, 13 CIT 345, 349–50, 712 F.Supp. 973, 977 (1989); *Chemical Prods. Corp. v. United States*, 10 CIT 626, 632–33, 645 F.Supp. 289, 294–95 (1986), *remand order vacated*, 10 CIT 819, 651 F.Supp. 1449 (1986). In fact, the information that Commerce ultimately selects as the best information available is "not necessarily accurate information, it is information which becomes usable because a respondent has failed to provide accurate information." *Asociacion Colombiana de Exportadores de Flores v. United States*, 13 CIT 13, 28, 704 F.Supp. 1114, 1126 (1989), *appeal after remand*, 13 CIT 526, 717 F.Supp. 834 (1989), *aff'd*, 901 F.2d 1089 (Fed.Cir.1990), *cert. denied sub nom. Floramerica, S.A. v. United States*, —— U.S. ——, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990).

In *Rhone Poulenc, Inc. v. United States*, 13 CIT 218, 710 F.Supp. 341 (1989), *aff'd*, 899 F.2d 1185 (Fed.Cir.1990), the court clearly exemplified the broad discretion af-

---

**1.** Formerly found at 19 U.S.C. § 1677e(b) (1988).

forded to the ITA when it selects best information available. This Court asserted in *Rhone Poulenc*, that "[o]nce Commerce has exercised its discretion to use the best information available rule against a respondent, it is for Commerce, not the respondent, to determine what is the best information." *Id.* at 224, 710 F.Supp. at 346. In *Rhone Poulenc*, the ITA likewise applied as best information available the highest margin (60%) from the LTFV determination rather than the margin from the current administrative review, and this Court deemed that selection reasonable. *Id.* at 225, 710 F.Supp. at 347. The Court of Appeals for the Federal Circuit affirmed this decision because "Rhone Poulenc offered no evidence showing that recent margins were more probative of current conditions than the highest prior margin...." *Rhone Poulenc*, 899 F.2d at 1190.

■ Similarly, the ITA in this case selected the highest prior margins as best information available. Allied–Signal assumed that because the ITA was reviewing several other countries' antifriction bearing sales from the same time period, this information was more representative of current market conditions than the LTFV information. *Plaintiff's Motion for Judgment Upon an Agency Record* at 26–27. Allied–Signal, however, like Rhone Poulenc, offered no evidence to support this assumption.

Furthermore, Commerce explained its reasoning for its selection of best information available at the administrative level. *Issues Appendix*, 56 Fed.Reg. at 31,704–06. The ITA stated that for the purpose of its final results, it applied two tiers of best information available as follows:

1. When a company refused to cooperate with the Department or otherwise significantly impeded these proceedings, we have used as BIA the higher of: (1) The highest of the rates found for any firm for the same class or kind of merchandise in the same country of origin in the less than fair value investigation (LTFV) or (2) the highest rate found in

this review for the same class or kind of merchandise in the same country of origin.

2. When a company substantially cooperated with our requests for information including, in some cases, verification, but failed to provide the information requested in a timely manner or in the form required, we have used as BIA the higher of: (1) The firm's LTFV rate for the subject merchandise (or the "all others" rate from the LTFV investigation, if the firm was not individually investigated), or (2) the highest calculated rate in this review for the class or kind of merchandise from the same country of origin.

*Id.* at 31,705.

The ITA stated that it applied the first tier of best information available because SNFA "responded to section A (general information) of the questionnaire, but did not respond to sections B, C, or D" and this "lack of information significantly impeded the Department's investigation." *Id.* at 31,706.

Plaintiff claims that this explanation is insufficient and does not justify resorting to the highest rates from the LTFV determination. This Court disagrees. Nevertheless, a court may "uphold [an agency's] decision of less than ideal clarity if the agency's path may reasonably be discerned." *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir.1987) (quoting *Bowman Transportation v. Arkansas–Best Freight Sys.*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)).

Furthermore, Commerce's two-tier best information available methodology employed in this case supports the reasonableness of the agency's actions. First, the methodology measured the level of cooperation exhibited by a respondent—a factor which the ITA is expressly allowed to consider in determining what to use as best information available. *See* 19 C.F.R. § 353.37(b) (1992).[2] This permitted the ITA

---

**2.** 19 C.F.R. § 353.37(b) states that "[i]f an interested party refuses to provide factual informa-

tion requested by the Secretary or otherwise impedes the proceeding, the Secretary may take

to send a strong message to non-respondents like SNFA that " 'failure to cooperate may work against their best interest.' " *Rhone Poulenc,* 899 F.2d at 1191 (quoting *Atlantic Sugar v. United States,* 744 F.2d 1556, 1560 (Fed.Cir.1984)). Secondly, this methodology enabled the ITA to determine what best information available to use in an expeditious manner, thus allowing the ITA to complete administrative proceedings within tight statutory deadlines. *See, e.g., N.A.R.,* 14 CIT at ——, 741 F.Supp. at 941. Thus, the use of this methodology allowed the ITA to make a reasonable selection of best information available.

Regarding Allied–Signal's claim that Commerce "punitively" applied the best information rule because it selected the highest margin, the Federal Circuit in *Rhone Poulenc* explained the circumstances in which it considered the application of best information available to be punitive. The plaintiff in that case likewise argued that Commerce "sought out the *most punitive* information, rather than the *best* information," when it resorted to the highest prior margin as best information available. *Rhone Poulenc,* 899 F.2d at 1190 (emphasis in original). Although the Federal Circuit declined to explicitly decide whether the ITA may use the best information available rule to "penalize" a party, it explained that best information available is characterized as "punitive" when the ITA rejects low margin information in favor of high margin information that is "demonstrably less probative of current conditions." *Id.*

In this case, as previously mentioned, Allied–Signal did not offer evidence to show that the margins from the LTFV determination were demonstrably less probative of current market conditions than the administrative review margins. Moreover, "the use of the highest prior margin as BIA is not punitive, rather there is a presumption that it 'is the most probative evidence of current margins.' " *Neuweg Fertigung GmbH v. United States,* 16 CIT ——, ——, 797 F.Supp. 1020, 1024 (1992) (quoting *Rhone Poulenc,* 899 F.2d at 1190).

that into account in determining what is the

Therefore, Commerce's selection of the LTFV rates were not "punitive," but rather were reasonable and in accordance with law.

## CONCLUSION

Commerce was justified in resorting to the best information available rule since SNFA failed to complete Commerce's questionnaire. Furthermore, Commerce reasonably applied as best information available the highest of the other companies' dumping rates from the earlier LTFV determination since plaintiff offered no evidence proving that recent margins were more probative. Therefore, Commerce's determination is affirmed in all respects and this case is dismissed.