**NSK LTD. and NSK Corporation, Plaintiffs,**

v.

**UNITED STATES; the United States Department of Commerce, Defendants,**

**The Timken Company, Defendant–Intervenor.**

**Court No. 90–10–00543.**

United States Court of International Trade.

Nov. 19, 1992.

Donohue and Donohue, Joseph F. Donohue, Jr. and Kathleen C. Inguaggiato, New York City, for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis; Joan L. MacKenzie, Atty.–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel, Washington, DC, for defendants.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen and Margaret E.O. Edozien, Washington, DC, for The Timken Co.

## OPINION

TSOUCALAS, Judge:

Pursuant to Rule 56.1 of the Rules of this Court, plaintiffs, NSK Ltd. and NSK Corporation (collectively "NSK"), move for an order granting judgment upon the agency record. NSK Ltd. is a manufacturer and exporter of tapered roller bearings ("TRBs") from Japan, and NSK Corporation is the importer of such merchandise. This motion challenges the final administrative determination of the United States Department of Commerce, International Trade Administration ("ITA" or "Commerce"), for TRBs imported into the United States from Japan. *Tapered Roller Bearings Four Inches or Less in Outside Diameter and Certain Components Thereof From Japan; Final Results of Antidumping Duty Administrative Review ("Final Results")*, 55 Fed.Reg. 38,720 (1990). This final determination covers TRBs manufactured by NSK and other manufacturers, and sold in the United States from August 1, 1986 through July 31, 1987 ("period of review").

## BACKGROUND

On September 21, 1987, Commerce published a notice of initiation of administrative review covering TRBs imported from Japan. *Initiation of Antidumping and Countervailing Duty Administrative Reviews; France et al.*, 52 Fed.Reg. 35,466 (1987).

On August 16, 1989, Commerce published the preliminary results of its administrative review for the antidumping findings on TRBs from Japan during the period of review and pronounced a dumping margin of 33.62% *ad valorem* for NSK. *Tapered Roller Bearings Four Inches or Less in Outside Diameter and Certain Components Thereof From Japan; Preliminary Results of Antidumping Duty Administrative Review ("Preliminary Results")*, 54 Fed.Reg. 33,749 (1989).

Commerce subsequently published the final results of the administrative review at

issue on September 20, 1990. *Final Results*, 55 Fed.Reg. at 38,720. In these results, Commerce reevaluated the preliminary results and imposed a higher dumping margin for NSK of 35.00% *ad valorem*. *Id.* at 38,729.

## DISCUSSION

When reviewing a final ITA determination, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988 & 1992 Supp.). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

### 1. Adjustment of Home Market Selling Price for Early Payment Discounts

■ Plaintiffs claim that the ITA erroneously failed to adjust plaintiffs' home market selling prices to account for early payment discounts. Commerce claims that it did not adjust foreign market value ("FMV") for early payment discounts in the home market because "NSK was unable to provide documents to support the total amount it had paid for early payment discounts." *Final Results*, 55 Fed.Reg. at 38,727 (Comment 58).

During the investigation, NSK claimed, and Commerce subsequently verified, that discounts were being given in the home market to customers for early payment. *NSK Questionnaire Response*, Administrative Record ("AR") (Conf.) Doc. 4 at 4, 16 (Att. 1); *NSK Home Market Sales Verification Report* ("*Verification Report*") AR (Conf.) Doc. 52 at 13. The issue before the court, however, is whether there was adequate documentation to support verification of the total amount paid for the discounts.

The record shows a discrepancy between the preliminary analysis memorandum and the verification report. In the preliminary analysis memorandum there lies an implication that Commerce requested documents to verify the total amount paid, and that such documents were not produced by NSK. *ITA Memorandum of Analysis*, AR (Conf.) Doc. 64 at 4–5. The verification report, however, makes no reference to the alleged inability to verify the total figure. *Verification Report*, AR (Conf.) Doc. 52 at 13. Commerce concedes this assertion and supports a finding for remand to reconsider NSK's claim for early payment discounts. *Defendants' Memorandum in Partial Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record* ("*Defendants' Memorandum*") at 5.

The Timken Company ("Timken") does not consent to remand on this issue and requests the court to affirm a determination which the ITA now concedes is suspect. Timken makes the misguided argument that it "was NSK's obligation to provide support for claimed adjustments during verification [and, further, that] [c]laims that are not verifiable from the record cannot be allowed under the statute." *Timken's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Judgment on the Agency Record* at 9.

As both Commerce and NSK have pointed out, Commerce's attempt and inability to verify the total amount paid by NSK for early payment discounts is not reflected in the record. Thus, Commerce's subsequent disallowance of an adjustment to NSK's FMV for early payment discounts is hereby remanded to Commerce to reconsider NSK's claim for early payment discounts and to clarify any discrepancy on the record.

### 2. Cost–Recovery on TRBs Sold Below Cost of Production

■ Secondly, plaintiffs claim that the ITA wrongfully excluded NSK's below cost sales in its calculations of foreign market value, and furthermore that it improperly disregarded the evidence offered by plaintiffs in support of recovering the costs of

selling TRBs at below the cost of production within a reasonable period of time and in the normal course of trade.

When the ITA determines that home market sales have been made at below the cost of production, such sales are disregarded in the calculation of foreign market value if the sales "(1) have been made over an extended period of time and in substantial quantities, and (2) are not at prices which permit recovery of all costs within a reasonable period of time in the normal course of trade." 19 U.S.C. § 1677b(b) (1988 & 1992 Supp.).

In the case at hand, Commerce determined that plaintiffs made below-cost sales over an extended period of time, the costs of which would not be recovered within a reasonable period of time in the normal course of trade. *Final Results*, 55 Fed. Reg. at 38,725 (Comment 41).

Plaintiffs acquiesce that below-cost sales were made over an extended period of time; however, they contest Commerce's determination that the costs of the sales will not be recovered.

In responding to Commerce's questionnaires, plaintiffs submitted information demonstrating that development costs incurred in 1986–87 reduced production costs in 1987–88. Commerce dispensed with this information offered by NSK by categorizing it as "mere claims" and "allegations" unsupported by evidence. As such, according to Commerce, the information is simply "insufficient to establish that NSK, in fact, recovered its costs with respect to the below-cost sales during the next review period...." *Defendants' Memorandum* at 13. It has been established by this Court that

> [i]f the cost of production declines in the future below the investigatory prices, ... then such prices may allow recoupment of all costs at some future date, and Commerce must determine whether the time necessary for complete recoupment is a "reasonable period of time in the normal course of trade" under section 1677b(b).

*Toho Titanium Co. v. United States* ("*Toho I*"), 11 CIT 160, 167, 657 F.Supp. 1280, 1286 (1987).

Moreover, plaintiffs provided Commerce with examples of four models of TRBs, sold below-cost in the period of review, for which costs were recovered within the year immediately following the period of review. This Court has determined in *Daewoo Elecs. Co. v. United States*, 13 CIT 253, 263, 712 F.Supp. 931, 942 (1989), that inquiries into the recovery of costs from below-cost sales should concern a period subsequent to the investigation. Since the period of review in the instant case is one year, it is pertinent that plaintiffs' showed by example, that subsequent recovery within one year is possible. In fact, in *Toho Titanium Co. v. United States* ("*Toho II*"), 11 CIT 680, 670 F.Supp. 1019 (1987), this court enunciated the following principle:

> The issue on remand is not whether the record supports the conclusion that Toho would be able to recover its costs at the prices charged during the investigatory period within a reasonable period of time in the normal course of trade, but whether there is substantial evidence on the record supporting Commerce's determination that Toho *could not recover* its costs at these prices in such time period.

*Id.* at 682, 670 F.Supp. at 1022 (emphasis in original).

In three cases, the Court remanded the final determination of the ITA, regarding recovery of costs due to below-cost sales, because the ITA's determination was not supported by substantial evidence on the record. *See Toho II, id.* at 684, 670 F.Supp. at 1023; *The Timken Co. v. United States*, 11 CIT 786, 673 F.Supp. 495 (1987); *Daewoo Elecs. Co.*, 13 CIT 253, 712 F.Supp. 931. Although the latter two may be distinguished on the facts (in *Timken*, hypothetical information was presented to show recoupment of costs and, in *Daewoo*, large marketing and start-up costs were erroneously disregarded by Commerce), the primary justification given in all three cases by the Court in remanding was that

> [c]entral to a proper determination by Commerce is some discussion on the rec-

ord as to why the prices charged on sales ... will not allow recovery of [the company's] costs in a reasonable period of time. *Toho I*, 11 CIT at 167, 657 F.Supp. at 1286.

This standard also applies to the case before us as well. Commerce has an affirmative duty to explain on the record why NSK's prices will not permit recovery of costs within a reasonable period of time in the normal course of trade. The only justification given by Commerce in its determination is that NSK "did not demonstrate that it would recover the costs of selling TRBs below cost within a reasonable period of time." *Final Results*, 55 Fed.Reg. at 38,725.

The standard of review, whether Commerce's action is supported by substantial evidence on the record and in accordance with law, implies that in the face of evidence to the contrary, the burden should be on Commerce to show why the costs will not be recovered within a reasonable period of time in the normal course of trade. Commerce did not sustain this burden. Therefore, this case is remanded to Commerce to either reconsider the sales made at below cost or to specifically substantiate on the record its determination that costs of below-cost sales would not be recovered in the normal course of trade within a reasonable period of time.

### 3. *Best Information Available*

■ Plaintiffs also claim that in calculating plaintiffs' dumping margins, Commerce punitively applied the highest dumping margin of any responding firm as best information available. Pursuant to 19 U.S.C. § 1677e(c) (1992 Supp.), "whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, [Commerce shall] use the best information otherwise available."

During the review at issue, Commerce claims that it selected the highest rate from all responding firms as best information available because NSK failed to provide Commerce with cost of manufacturing information for certain U.S. and home mar-

ket TRBs. *Final Results*, 55 Fed.Reg. at 38,728 (Comment 65). The court has previously affirmed Commerce's decision to use the highest rate for any responding firm when there was missing data necessary to the investigation. *See Allied–Signal Aerospace Co. v. United States*, 16 CIT ——, 802 F.Supp. 463 (1992); *NSK Ltd. v. United States*, 16 CIT ——, 794 F.Supp. 1156 (1992); *Rhone Poulenc, Inc. v. United States*, 13 CIT 218, 710 F.Supp. 341 (1989), *aff'd*, 899 F.2d 1185 (Fed.Cir.1990). In fact, in *Allied–Signal*, the Court stated that

> [t]he best information available provision is indeed broadly written and is intended to grant Commerce considerable discretion in determining what constitutes the best information available.... This Court asserted in *Rhone Poulenc*, that "[o]nce Commerce has exercised its discretion to use the best information available rule against a respondent, it is for Commerce, not the respondent, to determine what is the best information."

*Allied–Signal*, 16 CIT at —— — ——, 802 F.Supp. at 465–66.

Furthermore, the Court of Appeals for the Federal Circuit affirmed *Rhone Poulenc* because "Rhone Poulenc offered no evidence showing that recent margins were more probative of current conditions than the highest prior margin." *Rhone Poulenc*, 899 F.2d at 1190.

In this case, plaintiffs likewise did not offer evidence to show that the margin used by Commerce was unreasonable and not in accordance with law. Moreover, "the use of the highest prior margin as BIA is not punitive, rather there is a presumption that it 'is the most probative evidence of current margins.'" *Neuweg Fertigung GmbH v. United States*, 16 CIT ——, ——, 797 F.Supp. 1020, 1024 (1992) (quoting *Rhone Poulenc*, 899 F.2d at 1190). Therefore, Commerce's selection of the highest rate was not "punitive," but rather was reasonable and in accordance with law.

### 4. *Clerical Errors*

Finally, NSK identifies several computer programming errors committed by Com-

merce during the review. Briefly stated, they impact two areas of the investigation: (1) errors in calculating rebate amounts from U.S. selling price, as well as (2) programming logic pertaining to levels of trade in the home market for purposes of merchandise comparisons.

Thus, plaintiffs ask that these corrections be made and that the margin be recalculated and then published as amended. Since both Commerce and Timken agree with plaintiffs, this case is remanded to Commerce to correct these clerical errors as identified by plaintiffs.

### CONCLUSION

In accordance with the foregoing opinion, this case is remanded to Commerce to (1) reconsider NSK's claim for early payment discounts and clarify any discrepancies in the record thereto; (2) to either reconsider NSK's sales made at below-cost or to specifically substantiate on the record its determination that costs of below-cost sales would not be recovered in the normal course of trade within a reasonable period of time; and (3) to correct clerical errors. Also, plaintiffs' motion for judgment on the agency record regarding "best information available" is denied as Commerce's finding on this issue was reasonable. Commerce shall file remand results in this case with the Court within sixty (60) days of the date this opinion is entered. Any responses or comments must be filed within thirty (30) days thereafter. Parties may file rebuttal comments within fifteen (15) days of the date responses are due.

### PARTIAL JUDGMENT

This case having been duly submitted for decision following plaintiffs' motion for judgment on the agency record, pursuant to Rule 56.1 of the Rules of this Court, and the Court, after due deliberation, having rendered a decision herein; now then, in accordance with said decision,

IT IS HEREBY ORDERED that plaintiffs' motion regarding early payment discounts is denied in part; however, this case is remanded to the Department of Commerce, International Trade Administration ("Commerce"), to reconsider NSK's claim for early payment discounts and to clarify any discrepancies in the record thereto; and it is further

ORDERED that plaintiffs' motion regarding below-cost sales is denied in part; however, this case is remanded to Commerce to either reconsider NSK's sales made at below-cost or to specifically substantiate, on the record, its determination that costs of below-cost sales would not be recovered in the normal course of trade within a reasonable period of time; and it is further

ORDERED that plaintiffs' motion is denied in part as Commerce's use of "best information available" was supported by substantial evidence and otherwise in accordance with law; and it is further

ORDERED that plaintiffs' motion is granted in part and this case is remanded to Commerce to correct the computer programming errors pertaining to rebate amounts from U.S. selling price, as well as levels of trade in the home market for purposes of merchandise comparisons, and to then recalculate plaintiffs' margin accordingly and publish the new result; and it is further

ORDERED that the Department of Commerce shall report the results of the remand to this Court within sixty (60) days of the date this judgment is entered. Any responses or comments thereto must be filed within thirty (30) days thereafter. Parties may file rebuttal comments within fifteen (15) days after the date responses are due.