**KRUPP STAHL A.G. and Krupp Steel Products, Inc., Plaintiffs,**

v.

**UNITED STATES, et al., Defendants,**

and

**Allegheny Ludlum Steel Corp., et al., Defendant–Intervenors.**

Court No. 87–02–00199.

United States Court of International Trade.

May 26, 1993.

Coudert Brothers, Milo G. Coerper, Robert A. Lipstein, Matthew P. Jaffe, Washington, DC, for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, Robert E. Nielsen, of counsel, Washington, DC, for defendants.

Collier, Shannon, Rill & Scott, Paul C. Rosenthal and Robin H. Gilbert, Washington, DC, for defendant-intervenors.

DiCARLO, Chief Judge:

Plaintiffs, Krupp Stahl A.G. and its subsidiary (Krupp), challenge the final determination by the International Trade Administration, Department of Commerce (ITA or Commerce), of the first administrative review of the antidumping duty order regarding certain stainless steel sheet from the Federal Republic of Germany. The issue before the court is whether Commerce properly used the preliminary dumping margin from the less-than-fair-value (LTFV) investigation, which was based on petition information and superseded by the final margin in the LTFV investigation, as best information available (BIA) for the first administrative review period. The court has jurisdiction under 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988). Under the special circumstances of the case, the court holds that Commerce's choice of BIA is proper.

### Background

The history of this case goes back to Commerce's antidumping investigation of cold-rolled stainless steel sheet and strip products from Germany in 1982. The investigation was conducted with respect to Krupp and two other German manufacturers. Commerce's preliminary determination of the investigation established an estimated dumping

margin for Krupp's products at 27% *ad valorem*. *Certain Stainless Steel Sheet and Strip Products From the Federal Republic of Germany*, 47 Fed.Reg. 56,529 (Dep't Comm. 1982). The 27% margin was based on the simple average margins contained in the petition, as a result of Commerce's decision to resort to the BIA in the preliminary determination. *Id.* at 56,530.

Commerce subsequently verified Krupp's response and published a final determination of LTFV sales, establishing a final dumping margin of 7.76% *ad valorem* for Krupp. *Certain Stainless Steel Sheet and Strip Products From the Federal Republic of Germany*, 48 Fed.Reg. 20,459 (Dep't Comm.1983). An antidumping duty order was issued accordingly following the final affirmative injury determination of the International Trade Commission. *Certain Stainless Steel Sheet and Strip Products From the Federal Republic of Germany*, 48 Fed.Reg. 28,680 (Dep't Comm.1983).

In July 1983, Commerce commenced the first administrative review for the period of December 17, 1982 through May 31, 1983. Krupp submitted responses to Commerce's questionnaire and other requests for additional information. The administrative review, however, was terminated upon Krupp's withdrawal of its request for the continuation of the review following the voluntary restraint agreement between the United States and the European Community in July 1986. Pursuant to the regulations implementing the Trade and Tariff Act of 1984, which provide automatic assessment of entries at rates equal to the cash deposit of or bond for estimated antidumping duties required on the merchandise at the time of entry if no review is requested, *Antidumping and Countervailing Duty; Administrative Reviews on Request; Transition Provisions*, 50 Fed.Reg. 32,556 (Dep't Comm.1985), Commerce instructed the Customs Service to liquidate Krupp's entries of the first review period at the deposit rate of 27%, and of the succeeding period at the rate of 7.76%.

Krupp filed this action in 1987, contesting the 27% assessment rate and seeking a rate of 7.76% for the first review period. Alternatively, Krupp requested the court to remand the proceeding to Commerce with instructions to perform an administrative review of the entries at issue. In April 1991, the court remanded the proceeding with instructions for Commerce to conduct an administrative review for the first review period, holding that the 1984 Trade and Tariff Act does not retroactively affect investigations initiated before the effective date of the Act and that Commerce had obligations to conduct that review without Krupp's request. *Krupp Stahl A.G. v. United States*, 15 CIT ——, Slip Op. 91–31, 1991 WL 62139 (April 19, 1991).

Pursuant to the court decision, Commerce reinstated the review for the first review period and issued a new questionnaire to Krupp. In July 1991, Krupp informed Commerce that since German law does not require retention of business records for more than five years, its business records relevant to the review period were destroyed during 1989; as a result, it was unable to respond to the new questionnaire. Thus, Krupp conceded, Commerce would not be able to conduct the review in the manner contemplated by the court, and would be forced to use the best information available. Krupp claimed, however, that Commerce should use 7.76%, the final rate determined in the LTFV investigation, as the BIA rate for the first review period.

In November 1991, Commerce published the preliminary results of the administrative review, finding 27% as the assessment rate for the review period. *Cold–Rolled Stainless Steel Sheet From Germany*, 56 Fed.Reg. 56,976 (Dep't Comm.1991). The preliminary results stated that, because Krupp had failed to respond to the new questionnaire and destroyed the records needed to verify the adequacy of the information contained in the earlier response, Commerce used the BIA in the review, and that the BIA rate is 27% which was the rate provided in the petition as well as the rate assigned to Krupp in the preliminary determination. *Id.* at 56,977.

Commerce completed its review on May 21, 1992 and the final results of the review confirmed the BIA rate of 27% for the review period. *Cold–Rolled Stainless Steel Sheet from Germany*, Pub.R. 837 (Final Results).

Commerce decided not to publish the final results until it receives permission from the court.

## Discussion

This court shall sustain a final determination of Commerce in an administrative proceeding unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988).

Krupp asserts that Commerce's use of the petition-based preliminary LTFV rate as BIA in the administrative review is not supported by substantial evidence on the record and is not in accordance with law based on the following allegations: (1) the use of petition information as BIA in an administrative review is prohibited by the statute; (2) the use of petition information as BIA is unsupported by substantial evidence on the record because the petition itself is not included in the record for this administrative review; (3) the use of the petition-based preliminary LTFV margin as BIA in an administrative review is an unprecedented departure from Commerce's practice; and (4) the preliminary LTFV margin cannot be used to assess antidumping duties where it differs from the final LTFV margin.

### 1. Commerce's Selection of Best Information Available

■ Commerce is authorized by statute to use best information available to it as the basis for its action if it "is unable to verify the accuracy of the information submitted," 19 U.S.C. § 1677e(b) (1988), or if a party "refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation." Id. § 1677e(c). Because of its destruction of the records, Krupp does not dispute Commerce's resort to BIA in this administrative review. What Krupp challenges is Commerce's selection of the BIA.

The BIA statute does not define what is the "best information available" to the agency. Commerce's implementing regulations provide:

What is best information available. The best information available may include the factual information submitted in support of the petition or subsequently submitted by interested parties.... If an interested party refuses to provide factual information requested by the Secretary or otherwise impedes the proceeding, the Secretary may take that into account in determining what is the best information available.

19 C.F.R. § 353.37(b) (1992).

■ Under the current statutory scheme, Commerce has broad discretion in determining what constitutes the BIA in a given situation. "Once Commerce has exercised its discretion to use the best information available rule against a respondent, it is for Commerce, not the respondent, to determine what is the best information." *Rhone Poulenc, Inc. v. United States,* 13 CIT 218, 224, 710 F.Supp. 341, 346 (1989), *aff'd,* 8 Fed.Cir. (T) ——, 899 F.2d 1185 (1990) (citation omitted). "The information the ITA may use as best information includes 'all information that is accessible or may be obtained, whatever its source.'" *N.A.R., S.p.A., v. United States,* 14 CIT 409, 416, 741 F.Supp. 936, 942 (1990) (quoting *Timken Co. v. United States,* 11 CIT 786, 788, 673 F.Supp. 495, 500 (1987)). The best information "is not necessarily accurate information, it is information which becomes usable because a respondent has failed to provide accurate information." *Asociacion Colombiana de Exportadores de Flores v. United States,* 13 CIT 13, 28, 704 F.Supp. 1114, 1126 (1989), *aff'd,* 8 Fed.Cir. (T) ——, 901 F.2d 1089, *cert. denied sub nom. Floramerica, S.A. v. United States,* 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990). And the ITA is not required to equate "best information" with "most recent information" for computing the dumping margin. *Rhone Poulenc, Inc. v. United States,* 899 F.2d at 1190.

More importantly, in *Rhone Poulenc,* the leading case on Commerce's selection of BIA, the Court of Appeals sanctioned ITA's use of BIA as an effective means to induce respondent's cooperation in the administrative review. Although the Court of Appeals did not decide whether the ITA may use BIA to "penalize" a party, it affirmed that the ITA may use BIA "as 'an investigative tool, which

that agency may wield as an informal club over recalcitrant parties or persons whose failure to cooperate may work against their best interest.'" *Id.* 899 F.2d at 1191 (quoting *Atlantic Sugar Ltd. v. United States,* 2 Fed.Cir. (T) 130, 134, 744 F.2d 1556, 1560 (1984)). Following *Rhone Poulenc,* the Court of International Trade also sanctioned ITA's practice of taking into account the level of the respondents' cooperation in its use of BIA. *See Allied–Signal Aerospace Co. v. United States,* 16 CIT ——, 802 F.Supp. 463 (1992) (upholding ITA's two-tier use of BIA, under which the ITA imposes the most adverse rates upon those refusing to cooperate or otherwise significantly impeding the proceedings and less adverse rates upon those who are substantially cooperative but failed to provide requested information in a timely manner or in the form required).

■ It is not controverted in this case that Krupp destroyed its business records pertaining to the review period. Krupp claims that the records were destroyed because German law does not require retention of the records more than five years, and that the act was not out of malice or willful attempt to impede the review. However, Krupp has the responsibility of keeping the records during a pending litigation instituted by itself. *See Koyo Seiko Co. v. United States,* 16 CIT ——, 796 F.Supp. 517, 525 (1992) (stating Commerce's delay is no reason for Koyo to destroy records in an ongoing investigation). The court finds it particularly disturbing that Krupp destroyed the records while it was asking the court to grant a full administrative review as an alternative relief. In light of the cooperation-inducing function of the BIA rule, Krupp should not find itself in a better position as a result of its noncompliance than it would had it provided the ITA with complete, accurate, and timely data. To use the rate claimed by Krupp as BIA could in effect reward Krupp for its failure to cooperate with Commerce in the investigation. Moreover, "the best information rule is designed to prevent a respondent from controlling the results of an administrative review by providing partial information or by delaying or hindering the review." *Rhone Poulenc,* 13 CIT at 225, 710 F.Supp. at 347 (citation omitted). To use the rate demand-

ed by Krupp might have the effect of "plac[ing] control of the investigation in the hands of uncooperative respondents who could force Commerce to use possibly unrepresentative information most beneficial to them." *Id.*

Normally, when selecting a BIA rate for an uncooperative firm in an administrative review, it is Commerce's policy "to use the higher of (a) the highest rate for a responding firm with shipments during the period or (b) that firm's own last rate." *Roller Chain from Japan,* 56 Fed.Reg. 32,175, 32,176 (Dep't Comm.1991) (final results). This case, however, presents a special situation. Krupp is the firm that had the highest rate during the review period. Since this is the first administrative review, Krupp's own preliminary and final LTFV rates are the only data Commerce has for its selection of the BIA. Following the principle that a respondent should not be allowed to control the results of the review by providing partial information or otherwise hindering the review, *see Rhone Poulenc,* 13 CIT at 225, 710 F.Supp. at 347, Commerce had no choice but to reject the final rate claimed by Krupp and use the petition-based preliminary rate as the BIA.

## 2. Use of Petition Information as BIA in Administrative Review

■ Krupp asserts that Commerce's use of petition-based information as BIA in the administrative review is not in accordance with law. According to Krupp, the plain language of 19 U.S.C. § 1677e(b) and its legislative history demonstrate that Congress intended to restrict the use of petition information as BIA to LTFV investigations.

Section 1677e(b) provides, in pertinent part:

If the administering authority is unable to verify the accuracy of the information submitted, it shall use the best information available to it as the basis for its action, *which may include, in actions referred to in paragraph (1) [a final determination in an investigation], the information submitted in support of the petition.*

19 U.S.C. § 1677e(b) (emphasis added).

Commerce contends that the reference to the use of petition information as BIA in 19

U.S.C. § 1677e(b) is permissive rather than restrictive, and the BIA statute (including section 1677e(b) and (c)) does not contain any prohibition, explicit or otherwise, against using such information as a basis for the final results of an administrative review. *Final Results,* Pub.R. 844 (Comment 3).

In support of their respective interpretations of the statute, both sides cite the following passage in the Conference Report accompanying the Trade and Tariff Act of 1984:

> The express reference in the statute to the use of information submitted in support of the petition as the best information available for purposes of the final determinations in investigations should not be interpreted as precluding the administering authority from using the best information available for purposes of administrative reviews.

Conf.Rep. No. 1156, 98th Cong., 2d Sess. 177 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5220, 5294. This passage in the legislative history, however, does not provide a clear answer to the question of whether, by the permissive language of § 1677e(b), Congress intended to restrict the use of petition information as BIA to the LTFV investigations only.

"A reviewing court must accord substantial weight to an agency's interpretation of a statute it administers." *American Lamb Co. v. United States,* 4 Fed.Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986) (citing *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). When an agency interpretation does not contravene "clearly discernible legislative intent," the role of the court "is to determine whether the agency's interpretation is 'sufficiently reasonable.'" *Id.* (quoting *Federal Election Comm. v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981)). "The agency's interpretation need not be the only reasonable construction or the one the court would adopt had the question initially arisen in a judicial proceeding." *Id.* (citing *Chevron, U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843 n. 11, 104 S.Ct. 2778, 2782 n. 11, 81 L.Ed.2d 694 (1984)). Since the court does not find Commerce's interpretation of § 1677e(b) contravenes any "clearly discernible legislative intent," under the standard of *American Lamb* and in light of Commerce's broad discretion in selecting the BIA, the court must hold Commerce's interpretation as reasonable.

### 3. Petition not on the Record

Krupp contends that Commerce's use of petition-based information as BIA is not supported by substantial evidence because the petition itself is not included in the record of this administrative review. Krupp stated during the oral argument, however, since the petition rate is the same as the preliminary rate, it would be senseless to remand the case solely for the purpose of placing the petition on the record, and that it would be sufficient for the court to address the issue of whether the record supports Commerce's finding of the dumping margin at 27%.

For purposes of judicial review under 19 U.S.C. § 1516a, the record, "unless otherwise stipulated by the parties, shall consist of (i) a copy of all information presented to or obtained by [Commerce] . . . during the course of the administrative proceeding . . . and (ii) a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register." 19 U.S.C. § 1516a(b)(2) (1988). The record of this review contains, *inter alia,* a copy of the preliminary determination from the LTFV investigation adopting the petition rates, Pub.R. 9, and a copy of the preliminary results of the administrative review which refer to both the petition and the preliminary LTFV determination as the basis of BIA ("As BIA for [Krupp], [Commerce] used the simple average of the rates provided in the petition which is 27 percent. This also was the rate assigned to Krupp for the preliminary determination." 56 Fed.Reg. at 56,977). Pub.R. 614, 615. The petition itself is not included in the record. However, since the *petition was not the information presented to or obtained by Commerce during the administrative proceeding of this review,* Commerce is not required by the statute to include the petition in the review record.

The question is whether a published LTFV preliminary determination in the record is sufficient to support Commerce's BIA decision in the review. A similar situation was present in *Tai Yang Metal Indus. Co. v. United States*, 13 CIT 345, 712 F.Supp. 973 (1989), where Commerce used the final LTFV margin as BIA for the first administrative review without incorporating into the review record the information from the LTFV investigation. Tai Yang challenged this practice as unreasonable. Citing Commerce's broad authority to use BIA and its policy to utilize margins from the most recently determined duty rate as BIA without reexamining the accompanying record, the court held that "it was reasonable for Commerce to rely upon the published margin from the LTFV investigation as the best information available, without reassessing the record therefrom." *Id.* at 351, 712 F.Supp. at 978. Thus, under *Tai Yang*, a published LTFV determination is sufficient for the record to support Commerce's BIA decision in the administrative review.

Substantial evidence "is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Accordingly, the court finds that the record of this review, which includes the published preliminary LTFV determination adopting the petition rates, the published preliminary results of the administrative review referring to the use of the preliminary LTFV margin as BIA for the review, and the final results of the review explaining Commerce's position on the issue, contains substantial evidence supporting Commerce's BIA decision.

**4. Departure from Commerce Practice**

■ Krupp also contends that Commerce's use of a petition-based preliminary LTFV margin as BIA in an administrative review is an unprecedented departure from its practice. Whereas Commerce has used petition information as BIA for administrative reviews in the past, in each of such occasions the petition information so used was also adopted by the final LTFV determination.

■ It is "a general rule that an agency must either conform itself to its prior decisions or explain the reasons for its departure." *Citrosuco Paulista, S.A. v. United States*, 12 CIT 1196, 1209, 704 F.Supp. 1075, 1088 (1988) (citations omitted). While an agency is not obligated to follow prior decisions if new arguments or facts are presented that support a different conclusion, it cannot act arbitrarily. *Id.* (citations omitted).

In the Final Results, Commerce indicates the following reasons for its use of the petition-based preliminary margin as BIA. First, Commerce states that its selection of BIA is made on a case-by-case basis. Because each investigation and administrative review present it with a unique set of facts and circumstances, Commerce "often must select an appropriate unique BIA rate to achieve the purpose of the statute." *Final Results*, Pub.R. 848 (Comment 4). Second, Commerce indicates that it takes into account the level of cooperation by the respondent in deciding whether or not to use petition-based information in a given case. *Id.* "Because Krupp failed to respond to our most recent questionnaire and destroyed its business documents, thus precluding conduct of an administrative review and verification of the written information already on the record, ... use of a less adverse rate as BIA in the instant review would be inappropriate." *Id.* Pub.R. 856 (Comment 6). Because Commerce has provided these explanations, under the circumstances of limited BIA data in this review, the court finds Commerce did not act arbitrarily in using the petition-based preliminary LTFV rate as BIA.

**5. Preliminary LTFV Margin as BIA in Administrative Review**

■ Krupp further claims that Commerce's use of a preliminary LTFV margin as BIA in the administrative review is not in accordance with law because the preliminary LTFV margin cannot be used to assess antidumping duties where it differs from the final LTFV margin. According to Krupp, once Commerce calculated the final LTFV margin based on verified information, that

margin supersedes all unverified information submitted in the petition as probative evidence of past and current conditions. Krupp points out that Commerce declared in its final LTFV determination that the rates established in the preliminary determination were "no longer in effect." 48 Fed.Reg. at 20,461.

Commerce counters that a preliminary LTFV margin has significant legal force and effect: it serves not only as the base for cash deposit or posting of bond for the period covered by this administrative review, but also the rate cap for merchandise entered between the dates of the preliminary and final LTFV determinations. *See* 19 U.S.C. § 1673f(a) (1988). Moreover, Commerce argues, since the preliminary and final LTFV margins both relate to the period of investigation, which is prior to the period of review, the final LTFV margin is no more probative of the dumping margin for the period of review than the preliminary margin. Having destroyed the records, Commerce contends, Krupp has not provided any evidence showing that the final margin is more probative than the preliminary margin for the period of review.

In support of their respective positions, the parties dispute whether the preliminary LTFV margin is a "prior margin" under *Rhone Poulenc*, 899 F.2d at 1190, which held Commerce may use the "highest prior margin" as BIA in an administrative review. The *Rhone Poulenc* court stated that "it reflects a common sense inference that the highest prior margin is the most probative evidence of current margins because, if it were not so, the importer, knowing of the rule, would have produced *current* information showing the margin to be less. The agency's approach fairly places the burden of production on the importer, which has in its possession the information capable of rebutting the agency's inference." *Id.* 899 F.2d at 1190–11 (emphasis in original). Krupp argues that the preliminary LTFV margin *is* not a "prior margin" under *Rhone Poulenc*, because it has been superseded by the final margin as the most probative evidence of current margins. Commerce argues, on the other hand, that because a preliminary margin has its legal force, it "serves as a 'prior margin' to the same extent as a final margin." *Final Results*, Pub.R. 851 (Comment 5).

The court does not need to decide whether the "prior margins" under *Rhone Poulenc* include a preliminary margin. Krupp has provided no authority prohibiting Commerce from using a preliminary margin as BIA when there is a superseding final margin. Given the special circumstances of this case, that is, Krupp's destruction of the records during the process of litigation and the limited BIA data for use, Commerce's choice of BIA is within its discretion and is in accordance with law.

## Conclusions

For reasons stated above, Commerce's use of the petition-based preliminary LTFV margin as the best information available in the administrative review is supported by substantial evidence on the record and is in accordance with law.