D & L SUPPLY CO. and Guangdong Metals & Minerals Import & Export Corporation; U.V. International, Sigma Corporation, Southern Star, Inc., City Pipe and Foundry, Inc., Long Beach Iron Works, Inc., and Overseas Trade Corporation, Plaintiffs,

v.

UNITED STATES, Defendant,

Alhambra Foundry Inc., Allegheny Foundry Co., Bingham & Taylor Division, Virginia Industries, Inc., Charlotte Pipe & Foundry Co., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Tyler Pipe Industries, Inc., U.S. Foundry & Manufacturing Co. and Vulcan Foundry, Inc., Defendant–Intervenors.

Slip Op. 98–45.
Court No. 92–06–00424.

United States Court of
International Trade.

April 14, 1998.

Cameron & Hornbostel, LLP (Dennis James, Jr.), Washington, DC, for D & L.

White & Case (Walter J. Spak and Vincent Bowen), Washington, DC, for Sigma.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Henry R. Felix); of counsel: Stephen J. Powell, Chief Counsel for Import Administration, U.S. Department of Commerce (Jeffrey C. Lowe), Washington, DC, for defendant.

Collier, Shannon, Rill & Scott, PLLC (Paul C. Rosenthal, Robin H. Gilbert and Mary T. Staley), Washington, DC, for Petitioners.

*OPINION*

TSOUCALAS, Senior Judge.

On July 8, 1997, the Court remanded this matter to the Department of Commerce, International Trade Administration ("Commerce"). *See D· & L Supply Co. v. United States,* 21 CIT ——, Slip Op. 97–91, 1997 WL 397523 (1997). The remand was ordered pursuant to the decision (May 8, 1997) and mandate (June 30, 1997) of the Court of Appeals for the Federal Circuit ("CAFC"), directing this Court to vacate its decision to affirm the use of 92.74% as the best information available ("BIA") rate for the 1990–91 administrative review in Commerce's initial redetermination pursuant· to court remand, entitled *Iron Construction Castings From the People's Republic of China, Final Results of Redetermination Pursuant to Court Remand, Slip Op. 93–245* (June 6, 1994). In particular, the Court ordered Commerce to revise the 1990–91 BIA rate it applied without relying on an antidumping duty rate that has been vacated as erroneous, and in a manner consistent with 19 U.S.C. § 1677e(c) (1988). *D & L,* 21 CIT at ——, Slip Op. 97–91, at 2.

Commerce's established procedures allow it to use the highest calculated rate available for any company from the less than fair value ("LTFV") investigation or any previous review as BIA for uncooperative exporters. No producer or exporter of iron castings from the People's Republic of China ("PRC") responded to Commerce's questionnaires in the fourth review. Commerce therefore originally selected 92.74% as the BIA rate for the review, the rate calculated during the third review period (1989–90) for the only PRC manufacturer or exporter that responded to Commerce's questionnaire, Guangdong Metals & Minerals Import & Export Corp. *See Final Results of Antidumping Duty Administrative Review: Certain Iron Construction Castings From the People's Republic of China,* 57 Fed.Reg. 10,644 (Mar. 27, 1992). In the litigation covering the third review period, the 92.74% BIA rate was reduced to 31.51%. *See Sigma Corp. v. United States,* 19 CIT 753, 888 F.Supp. 159 (1995). This Court nevertheless upheld Commerce's

decision to retain the 92.74% BIA rate for the fourth period of review. The CAFC subsequently remanded the action for Commerce to revise this BIA selection in favor of a rate that had not been invalidated while the BIA determination was still under judicial review. *See D & L Supply Co. v. United States,* 113 F.3d 1220, 1224 (Fed.Cir.1997). Thereafter, the CAFC invalidated the reduced third review period BIA rate, as well as reduced BIA rates for the first and second review periods, in a consolidated action. *See Sigma Corp. v. United States,* 117 F.3d 1401 (Fed.Cir.1997).

On September 15, 1997, Commerce released draft remand results in this action and invited interested parties to comment. After receiving comments from certain U.S. importers and from domestic industry, Commerce filed its *Final Results of Redetermination Pursuant to Court Remand, D & L Supply Co. v. United States, Consol. Ct. No. 92–06–00424* ("*Remand Results*") (Oct. 8, 1997). In the Remand Results, Commerce relied on the 25.52% petition rate, which reflects the overall average of the margins alleged in the petition, as BIA for the fourth review period.

D & L Supply Co. ("D & L") and U.V. International, Sigma Corporation, City Pipe & Foundry, Inc. and Long Beach Iron Works, Inc. (collectively "Sigma") move for another remand, claiming that Commerce should use as BIA the 11.66% rate it calculated in the final LTFV determination because this is the only valid, accurate rate available. In particular, D & L and Sigma argue that Commerce again chose an invalidated BIA rate, in violation of the CAFC's *D & L* determination. D & L and Sigma further contend that using the average petition rate contravenes the antidumping statute's purpose of calculating accurate margins and fails to accomplish the basic goal of BIA—to choose a rate reasonably adverse to the interests of the uncooperative parties—at the expense of accuracy and a close relation to commercial practices. *D & L's Comments on the Remand Results* at 1–10; *Sigma's Comments on the Remand Results* at 1–8.

Alhambra Foundry Inc., Allegheny Foundry Co., Bingham & Taylor Division, Virginia Industries, Inc., Campbell Foundry Co., Charlotte Pipe & Foundry Co., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., Opelika Foundry Co., Inc., Tyler Pipe Industries, Inc., U.S. Foundry & Manufacturing Co. and Vulcan Foundry, Inc. (collectively "Petitioners") also contest Commerce's choice of BIA in the Remand Results. Petitioners allege that, instead of using the average petition rate as BIA, Commerce should have used the highest petition rate, 50.95%, in accordance with *Certain Cut–to–Length Carbon Steel Plate From Sweden: Final Results of Antidumping Duty Administrative Review* ("*Swedish Steel Plate*"), 62 Fed.Reg. 46,947 (Sept. 5, 1997). While Petitioners recognize that the average petition rate is higher than the final rate found in the LTFV investigation, they note that this rate may be below the dumping margins found in subsequent reviews after the remand proceedings are complete. Petitioners further claim that Commerce's rejection of the highest petition rate because it was based on dumping calculations for only one type of casting is unrelated to Commerce's practice of basing BIA on the highest rate for uncooperative respondents. *Petitioners' Comments on the Remand Results* at 1–8.

Commerce first responds to D & L's and Sigma's complaints, stating that the 25.52% average petition rate has not been invalidated. Commerce then responds to Petitioners, asserting that it rejected the highest rate from the petition because this rate was solely based on dumping for light castings, only one of four kinds of products covered by the petition. *Def.'s Rebuttal to Comments on the Remand Results* at 1–25.

D & L adds that Petitioners' position is without merit because the highest petition rate is invalid. *D & L's Rebuttal to Comments on the Remand Results* at 2–10. D & L further responds that *Swedish Steel Plate* is distinguishable because the respondents in that case attempted to manipulate the "facts available" process, while the respondents here "simply chose not to respond because Commerce kept changing the methodology it used to calculate the margins," hence foreclosing them from the United States market.

*Id.* at 3. Finally, D & L attempts to distinguish cases where this court upheld Commerce's use of the average petition rate as BIA, arguing that the respondents in those cases attempted to manipulate the review process by obtaining a low rate and then refusing to cooperate. *D & L's Reply to Rebuttal Comments on the Remand Results* at 1–11.

In response to D & L, Petitioners assert that case law reinforces Commerce's decision to select a petition rate for BIA even when a different rate is calculated in the final determination. *Petitioners' Rebuttal to Comments on the Remand Results* at 1–4.

### 1. Use of the Highest Petition Rate

■ Commerce properly declined to use the highest petition rate in this case. As a preliminary matter, the Court declines to entertain D & L's differentiation of *Swedish Steel Plate* on the ground that the respondents in that case attempted to manipulate the review process. The statute, regulations and case law have not carved an exception to BIA for non-respondent companies such as D & L who have become frustrated with Commerce's methodology and its adverse results.

Contrary to Petitioners' assertions, Commerce adhered to its usual practice in selecting the average petition BIA rate for uncooperative firms under the circumstances. Commerce ordinarily selects BIA from a petition in the *initial* LTFV investigation, not from a petition in an administrative review. In the few cases where Commerce has selected BIA from an administrative review, however, Commerce has relied upon the simple average petition rate. *See Industria de Fundicao Tupy v. United States,* 20 CIT ——, ——, 936 F.Supp. 1009, 1019 n. 7 (1996); *Krupp Stahl A.G. v. United States,* 17 CIT 450, 452, 822 F.Supp. 789, 791 (1993).

Moreover, the present situation is distinguishable from *Swedish Steel Plate,* where Commerce resorted to the use of the highest petition rate for BIA. The petition in that case calculated a *range* of dumping margins, each of which covered the entire class or kind of merchandise within the scope of investigation. *Remand Results* at 12–13. In contrast, the petition filed in this case calculated *separate* dumping margins for the three different types of heavy iron construction castings and the one type of light casting. *Id.* at 12–14. Petitioners essentially claim that Commerce should have used the 50.95% petition calculation for the light castings, which account for approximately 18% of the total castings under review, as BIA for all four casting types. Because Commerce has treated all castings in this proceeding as one class or kind and has calculated a single dumping margin for all entries, to require Commerce to employ as BIA the highest petition rate would improperly assign a margin to all castings within the scope of review that is, in fact, based on a small portion of covered merchandise. Such a result would not only ignore Commerce's established BIA practice, but also contravene one of BIA's ultimate purposes—to promote the calculation of relatively accurate dumping margins. *See, e.g., D & L,* 113 F.3d at 1223 (stating that BIA should "bear[ ] some relationship to past practices in the industry in question" and promote accuracy).

### 2. Use of the Final LTFV Rate

■ The CAFC agreed that the PRC exporters did not cooperate with Commerce's requests for information in the fourth period review, hence justifying the application of the highest available prior rate as BIA. *D & L,* 113 F.3d at 1222–23. The BIA rule is designed as an "investigative tool ... [Commerce] may wield as an informal club over recalcitrant parties," *Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556, 1560 (Fed.Cir. 1984), to induce respondents to provide Commerce with timely, complete and accurate information. *See Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1190–91 (Fed. Cir.1990). As this court recently stated, however, *D & L* "stands for the proposition that [Commerce] cannot use a rate for BIA purposes that has been invalidated." *Pulton Chain Co. v. United States,* 21 CIT ——, ——, 1997 WL 755135, Slip Op. 97–162, at 7 (Dec. 2, 1997) (citing 113 F.3d at 1221). In this case, therefore, the Court must determine whether the average petition rate Commerce relied upon for BIA in the fourth

review period has been invalidated. The Court concludes that it has not.

First, as this Court stated above with respect to *Swedish Steel Plate*, D & L's claim that *Tupy* and *Krupp* are distinguishable is incorrect; the Court refuses to create an exception for companies that choose not to respond merely because they are frustrated with the review process and its results.

D & L's and Sigma's positions primarily rest on the assertion that a petition rate is invalidated once Commerce arrives at an "actually calculated" rate, in this case the final LTFV rate. The Court first notes that while a petition rate is admittedly an estimate of the actual rate of dumping, it is sufficiently reliable for Commerce to initiate an investigation and is, therefore, a reasonable preliminary basis for determining dumping margins. Further, the court has upheld Commerce's reliance on the average petition rate as BIA in a subsequent administrative review despite the existence of a lower final LTFV rate. *See Tupy*, 20 CIT at ——, 936 F.Supp. at 1017 (upholding Commerce's BIA rate based on the average petition rate); *Krupp*, 17 CIT at 454–55, 822 F.Supp. at 793–94 (permitting Commerce to use a petition-based preliminary LTFV margin as BIA). Finally, the CAFC in *D & L* emphasized that the 92.74% BIA rate was invalid because it was grossly excessive and had no pretension to accuracy; the 25.52% BIA rate at issue, while imprecise, is not such a flawed figure. The petition rate is therefore not automatically invalid once Commerce calculates a final LTFV rate.[1]

▮ Most of the rates calculated in these proceedings subsequently have been invalidated. Moreover, as the Court determined above, the highest petition rate is inappropriate as BIA in this case. As a result, only two rates remain upon which Commerce can base BIA: the 25.52% average petition rate and the 11.66% final LTFV rate. The Court concludes that Commerce's decision to use the average petition rate as BIA under the circumstances is proper.

While the CAFC stated its concern in *D & L* regarding BIA rates that have been demonstrated to be inaccurate, grossly excessive or seriously flawed, it also stressed that a BIA rate must "offer[ ] some assurance that the exporter will not benefit from refusing to provide information." 113 F.3d at 1223. It is unlikely that the 11.66% final LTFV rate is sufficient to offer any such assurance or to induce future participation from the uncooperative PRC companies to which it was applied. The Court therefore refuses to permit the respondents in this case to retain this low investigation rate by refusing to cooperate in subsequent reviews.

As the 11.66% final LTFV rate is inadequate for Commerce to rely upon for BIA, the sole valid rate that remains is the 25.52% average petition rate. The Court finds that this rate has not been invalidated and reasonably achieves the purposes of BIA discussed by the CAFC in *D & L*. Specifically, the 25.52% rate induces foreign exporters to cooperate with Commerce in future administrative reviews while maintaining some relationship to commercial practices in the PRC iron casting industry and promoting accuracy in these antidumping proceedings.

### Conclusion

In accordance with the foregoing opinion, the Court finds that Commerce's Remand Results are consistent with law and supported by substantial evidence on the record. Consequently, Commerce's Remand Results are affirmed in their entirety and this case is dismissed.

### JUDGMENT

The Department of Commerce, International Trade Administration ("Commerce"), having submitted its *Final Results of Redetermination Pursuant to Court Remand, D*

---

1. In *Pulton Chain*, the court stated that "[w]hile an abandoned rate is not quite the same as a rate invalidated by a court, ... it is very close." 21 CIT at ——, Slip Op. 97–162, at 8, 1997 WL 755135. The Court concludes that Commerce did not "abandon" the petition rate within the court's meaning in *Pulton Chain*. The rate at issue in that case was a 15 year old deposit rate of 43.29% that the court found was not only extremely outdated and excessive, but promulgated under circumstances that made it unusually suspect. *Id.* Moreover, the relevant respondent's rates had fluctuated between the 0–6% range. *Id.* In contrast, the rate in this case is a relatively recent petition rate that is not excessive.

& L Supply Co. v. United States, Consol. Ct. No. 92–06–00424 ("Remand Results") (Oct. 8, 1997), and the Court having examined all comments filed regarding Commerce's Remand Results, it is hereby

**ORDERED** that all requests for further remand to alter Commerce's choice of a BIA rate for this review are denied; and it is further

**ORDERED** that the Remand Results are affirmed in all respects; and it is further

**ORDERED** that, all other issues having been decided, this case is dismissed.