**CULTIVOS MIRAMONTE S.A. and Flores Mocari S.A., Plaintiffs,**

v.

**UNITED STATES, Defendants,**

**Floral Trade Council, Defendant–Intervenor.**

Slip Op. 98–47.
Court No. 96–09–02222.

United States Court of International Trade.

April 15, 1998.

Arnold & Porter (Michael T. Shor ), Washington, DC, for Plaintiffs.

Frank W. Hunger, Assistant Attorney General of the United States, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Velta A. Melnbrencis, Assistant Director; Of Counsel, Lucius B. Lau, Attorney, Office of the Chief Counsel for Import Administration, Department of Commerce, Washington, DC, for Defendants.

Stewart & Stewart (Terence P. Stewart, James R. Cannon, Jr., Amy S. Dwyer, and Mara M. Burr ), Washington, DC, for Defendant–Intervenor.

## *OPINION*

POGUE, Judge.

On September 17, 1997, this Court remanded certain aspects of the Department of Commerce's ("Commerce") determination in *Certain Fresh Cut Flowers from Colombia,* 61 Fed. Reg. 42,833 (Dep't Commerce 1996)(final results 5, 6, and 7 admin. review). *Cultivos Miramonte S.A. v. United States,* 21 CIT ——, 980 F.Supp. 1268 (1997). Specifically, the Court asked that Commerce: 1) reconsider the cost-allocation treatment of land-preparation costs; 2) select an inflation-adjustment factor for pompons (pompon chrysanthemums) and chrysanthemums (standard chrysanthemums) based upon the production cycle of these flower types; and 3) correct the interest rate selected to calculate imputed U.S. credit expenses. Final Results of Redetermination Pursuant to

---

**1.** Familiarity with the Court's earlier decision in this case is presumed.

**2.** Respondents Cultivos Miramonte S.A. and Flores Mocari S.A. are two related Colombian companies that produce and export fresh-cut flowers to the United States. Without objection, Commerce

Court Remand at 3 ("Remand Determination").[1]

## I.  Treatment of Miramonte's Land Adequation Costs

### 1. *Commerce's Five–Year Allocation Methodology*

In the underlying administrative review, Commerce based foreign market value on constructed value pursuant to 19 U.S.C. § 1677b(a)(2) (1988). In order to calculate constructed value, Commerce requested that respondents, Cultivos Miramonte S.A. and Flores Mocari S.A. ("Miramonte")[2] provide information regarding indirect costs and expenses incurred in the cultivation and harvesting of their flowers. *See* ITA Section B-C Quest., Pub. Doc. 450 (4/13/94) at 66. For these costs Commerce's questionnaire instructed, "[r]egardless of whether your company capitalized expenditures or expensed them, the cost submission should be consistent with your normal production accounting system and based on your actual accounting records, if your system and records are in accordance with Generally Accepted Accounting Principles (GAAP)." Pub. Doc. 450 at 62. Miramonte reported, among others, depreciation expenses for its greenhouses and "land adequation." Land adequation was described by Miramonte as leveling terrain, digging ditches, and constructing drainage systems for its greenhouses. *See* Miramonte Public Section D QR, Pub. Doc. 783 (7/8/94) at 41.

In its accounting records Miramonte allocated the costs of the greenhouses over a twenty-year period and the costs of land adequation over a five-year period. In its questionnaire response Miramonte allocated its greenhouse costs over the same twenty-year period reflected in its books; for land adequation Miramonte allocated the costs over a twenty-year period as well, arguing that "the leveling, ditching and drainage will provide a benefit over the useful life of the

"collapsed" the two companies and treated them as a single entity for antidumping purposes. *See Certain Fresh Cut Flowers from Colombia,* 60 Fed.Reg. 30,270, 30,271 (Dep't Commerce 1995)(prelim. results admin. rev.).

greenhouse." Pub. Doc. 783 at 31. Miramonte explained that the discrepancy between its questionnaire response and its accounting records was due to the fact that its accounting records were "primarily oriented for tax purposes." *Id.* at 21. Miramonte also said that it allocated its adequation costs in exactly the same way for the third and fourth administrative reviews. *Id.*

In the Final Results, for land adequation, Commerce used the five-year cost allocation in Miramonte's accounting records rather than the twenty-year allocation provided in Miramonte's questionnaire response. 61 Fed.Reg. at 42,846. Commerce stated that its administrative practice "is to adhere to an individual firm's recording of costs in accordance with GAAP of its home country if we are satisfied that such principles reasonably reflect the costs of producing the subject merchandise." *Id.*

Commerce rejected Miramonte's twenty-year allocation because "[a]lthough Miramonte stated that it considered land adequation to have the same useful life as a greenhouse, it never explained why it treated land adequation expenses differently in its accounting records, nor did Miramonte justify why a five-year amortization did not reasonably reflect the costs of producing the merchandise." *Id.; see also* Commerce Public Analysis Memo, Pub. Doc. 1733 (6/28/96) at 2–3.

The Court was not satisfied with Commerce's explanation for rejecting a methodology it had accepted in earlier reviews. "Commerce has the flexibility to change its position providing that it explains the basis for its change, and providing that the explanation is in accordance with law and supported by substantial evidence." *Cultivos*, 21 CIT at ——, 980 F.Supp. at 1274 (footnotes omitted). The Court found that Commerce had not adequately explained its position. "Commerce stated ... that Miramonte 'never explained why it treated land adequation expenses differently in its accounting records,' ...." *Id.* at 1275 (quoting the final results, 61 Fed.Reg. at 42,847). However, the Court found that,

> Miramonte did, ..., alert Commerce that its accounting records were "primarily ori-

ented for tax purposes." Miramonte Public § D QR, Public Doc. 783 (7/8/94) at 21. This may or may not have been a sufficient explanation, ... but it was some explanation. Commerce's conclusion that Miramonte "did not justify why a five year amortization did not reasonably reflect the cost of producing the merchandise," 61 Fed.Reg. at 42,846, is similarly at odds with the administrative record. Miramonte explained that the land preparation provided a useful benefit for the life of its greenhouses which lasted twenty years. It therefore allocated the land preparation costs over twenty years. Here again, this explanation may or may not have been sufficient, but it nonetheless was some justification for Miramonte's claim that the five-year amortization did not reasonably reflect the cost of producing the merchandise. The record does not support the finding that Miramonte never explained or justified its questionnaire response.

*Id.* Because Commerce's explanations were at odds with the administrative record, the Court remanded. *See id.* at 1275 (citing *Camp v. Pitts*, 411 U.S. 138, 143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)(stating that if the contemporaneous explanation of the agency is based on a finding that is not sustainable on the administrative record, the matter must be remanded for further consideration)).

Upon remand, Commerce continued to amortize land adequation costs over a five-year period.

■■■ The statute requires that Commerce's determination be supported by substantial evidence. Here, Commerce explained that Miramonte's accounting records are kept in accordance with Colombian GAAP and that "Colombian GAAP requires that companies amortize assets over the period some benefit is derived from the assets (the assets' useful life)." Remand Determination at 7. Based on Commerce's explanation, the Court concludes that Miramonte's use of a five-year amortization schedule in its accounting records constitutes substantial evidence that the benefits of land adequation last five years, and that Commerce's five-year allocation of amortization costs reflects

Miramonte's actual costs. Furthermore, "this Court has consistently upheld Commerce's reliance on a firm's expenses as recorded in the firm's financial statements, as long as those statements were prepared in accordance with the home country's GAAP and do not significantly distort the firm's actual costs." *FAG U.K. Ltd. v. United States*, 20 CIT ——, 945 F.Supp. 260, 271 (1996). Here, Commerce relied on respondents' verified financial statements to calculate costs. The burden rests on Miramonte to prove that the methodology used in Miramonte's financial statements in accordance with Colombian GAAP distorted costs. *See Cinsa, S.A. de C.V. v. United States*, 21 CIT ——, 966 F.Supp. 1230, 1235 (1997) ("Cinsa submitted its financial statements that reflected revalued depreciation costs which were consistent with Mexican GAAP. The Court finds that the burden rests on Cinsa to prove that the use of revalued depreciation in calculating CV and COP distorted costs."); *see also Hercules, Inc. v. United States*, 11 CIT 710, 755–56, 673 F.Supp. 454, 491 (1987) (agreeing with Commerce that it was respondent's duty to come forth with "verifiable substantiating evidence" to support its claim that methodology adopted "for tax purposes" in accordance with respondent's home-country GAAP distorted costs). Commerce determined that Miramonte failed to meet this burden.

> Cultivos Miramonte justified the use of the alternative methodology [twenty-year allocation] by trying to correlate the useful life of land-adequation costs with the useful life of greenhouses. However, ... it is not evident that 'leveling, ditching, and drainage' are one-time events just for the construction of greenhouses rather than activities that occur periodically.

Remand Determination at 8. Miramonte argues that its statement that, "the land preparation costs will provide a benefit over the useful life of the greenhouse is *per se* evidence that use of a five-year amortization period is distortive." Comments of Cultivos Miramonte S.A. and Flores Mocari S.A. on Draft Remand Results at 3 ("Miramonte Comments"). In response, Commerce states, "[i]f Cultivos Miramonte had provided ... documentary evidence to support its

claims that ... land-preparation costs are tied exclusively to construction of greenhouses that last twenty years, we might have been able to determine whether an alternative reporting methodology was appropriate." Remand Determination at 16.

Similarly, Commerce explains that Miramonte claimed that the use of a five-year amortization period was solely for tax purposes. However, "[t]he part of the record to which Cultivos Miramonte refers in order to justify not using a five-year amortization period is simply a declaratory statement claiming that its accounting records are 'tax-motivated.'" Remand Determination at 15–16. Again, Commerce says, Miramonte failed to provide sufficient documentary evidence to support its claim.

In the absence of such documentary evidence, Commerce's determination that Miramonte failed to meet its burden of proof was reasonable. Thus, the Court finds that Commerce's decision to rely on the five-year allocation methodology used in Miramonte's accounting records was supported by substantial evidence and therefore, in accordance with law.

### 2. Commerce's Refusal to Accept New Factual Information Upon Remand

In submitting its comments on the remand determination, Miramonte included a declaration of its general manager to support its assertions regarding the useful life of land adequation benefits. Commerce rejected this declaration, "because it contain[ed] unsolicited and untimely new factual information." Memo. re: Rejection of New Factual Information, November 13, 1997.

■ Miramonte now argues that "[t]he case law is clear that absent an express prohibition by the Court, Commerce may always consider new factual information in a remand determination." Miramonte Comments at 7 (citing *Laclede Steel Co. v. United States*, 1995 WL 476716, 19 CIT 1076, 1078 (1995)). Miramonte is correct; Commerce *may* accept new information upon remand. However, it is not required to accept new information unless directed to do so by the court. Thus it was within Commerce's discretion either to accept or reject the General Manager's declaration.

As this Court noted in its original opinion, "[t]he administrative practice of adhering to

books and records kept in accord with home country GAAP, unless distortive, had not changed from one review to the next; .... presumably, having known what that practice was, Miramonte submitted evidence of distortion that it deemed sufficient to justify deviation from its books and records." *Cultivos*, 21 CIT at ——, 980 F.Supp. at 1274–75.

■ Because Miramonte was given an adequate opportunity to submit evidence on this issue in the underlying review, Commerce's refusal to accept new information at this stage was within its discretion.

## II. Inflation Adjustment Methodology

A change in Colombian GAAP, effective January 1, 1992, required that firms revalue certain financial-statement accounts to reflect the effects of inflation experienced during each financial-reporting period. In response to this change, Commerce asked respondents in the underlying administrative reviews to provide additional information to adjust the depreciation and amortization costs that they reported as part of the cost of production. Commerce found that Miramonte's data on the effects of inflation on its cost data were inconsistent with Miramonte's originally submitted data, and therefore considered the company to be non-responsive. *Cultivos*, 21 CIT at ——, 980 F.Supp. at 1277. In the Final Results, as partial best information available (BIA), Commerce calculated its own inflation-adjustment factors and applied them to the costs that Miramonte had originally reported. *Id.* at 1279. The inflation-adjustment factors were based on monthly inflation rates published by the Colombian government. *See* Remand Determination at 9.

This Court sustained Commerce's rejection of Miramonte's inflation adjustment data and its use of partial BIA to adjust Miramonte's production costs. *See Cultivos*, 21 CIT at ——, 980 F.Supp. at 1278–79.

However, the Court remanded for Commerce to reconsider the inflation factors it used to adjust Miramonte's data because Commerce calculated its inflation factors based on the production cycle of carnations. Miramonte did produce standard carnations for export during the fifth review period and submitted constructed value information for this flower type. Miramonte Verification Report at 1, Pub. Doc. 1270 (10/24/94). However, Miramonte primarily produced pompons and chrysanthemums for the periods of review. The production cycle for pompons and chrysanthemums is shorter than the production cycle for carnations. Miramonte, therefore challenged Commerce's application of an inflation adjustment factor based on the production cycle of carnations.

Through counsel, Commerce conceded that the selection of an inflation factor based on the production cycle of carnations was an error and requested a remand to re-calculate Miramonte's inflation adjustment factor based on the production cycles of chrysanthemums and pompons. The Court granted Commerce's request.

The Court also ordered that upon remand, Commerce address the argument raised by Defendant–Intervenor, the Floral Trade Council, that Commerce's selected inflation-adjustment factor must be adverse because Commerce had found Miramonte to be non-responsive. *Cultivos*, 21 CIT at ——, 980 F.Supp. at 1280.

In the remand determination, Commerce recalculated the inflation-adjustment factor based on the production cycle for pompons, which the Department estimated to be about four months.[3] Remand Determination at 11.

3. The effect of this change was to reduce the constructed value which the Department compares to United States price in calculating antidumping duty margins. The reduction in constructed value had a net effect of reducing margins. The Department did not recalculate the inflation-adjustment factors applied to Miramonte's cost of producing chrysanthemums or pompons in the sixth period of review ("POR") or standard chrysanthemums in the seventh POR because there were no dumping margins on sales of these flower types and the change would have no effect. The Department did not recalculate the inflation-adjustment factors applied as partial BIA in the 5th POR because only two months' worth of costs were affected by the change in Colombian GAAP, so the inflation-adjustment factors for the fifth POR were only based on two months of inflation, which is within the production cycle of pompons and chrysanthemums.

The recalculated inflation-adjustment factors are based on the entire production cycle for pompons, which the Department estimated to be about four months.

■ Miramonte objects to Commerce's remand determination, arguing that in the final results, Commerce applied inflation adjustment factors only to depreciation and amortization expenses. In refusing to adjust other costs for inflation, Commerce drew a distinction between "inflation effects 'largely contained within the POR [period of review],' and inflation effects not largely contained within the POR." Miramonte Comments at 12 (citing Final Results, 61 Fed.Reg. at 42,845).

The four-month production cycle of chrysanthemums and pompons, Miramonte argues, is " 'largely confined within the period of review.' Commerce cannot have it both ways—rejecting inflation adjustments that reduce costs because costs are 'largely confined' to the POR yet still making inflation adjustments that increase costs to expenses 'largely confined' to the POR." Miramonte Comments at 12.

Although Miramonte challenged Commerce's application of a BIA rate based on the production cycle of carnations in the underlying review, it never argued that its costs should not be adjusted at all. Miramonte never raised that issue until Commerce released its draft remand results. On the contrary, in its brief to this Court, Miramonte argued that Commerce should have "relied ... on Miramonte's August, 1994 submitted cost data for pompons, and chrysanthemums, and properly adjusted such data for inflation reflecting the three- and four-month offset periods ... reflecting the production process for pompons and mums,...." Pls.' Brief Support Rule 56.2 M.J. Agency Rec. at 10.

Miramonte contends that it never had the opportunity to raise this issue with Commerce because Commerce had not previously applied four-month inflation adjustments to any respondent in this review. However, it was Miramonte that suggested that Commerce rely on the chrysanthemum production cycle. Miramonte could have argued then that Commerce should not make any inflation adjustments to Miramonte's production costs because of the brevity of its production cycle. Miramonte never made this argument. It is too late to raise it now. *See Unemployment Compensation Comm'n of Alaska v. Aragon,* 329 U.S. 143, 154, 67 S.Ct. 245, 91 L.Ed. 136 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination on a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action."); *Aramide Maatschappij V.o.F. v. United States,* 19 CIT 1094, 1097–98, 901 F.Supp. 353, 357 (1995) (rejecting plaintiffs' challenge to aspect of Commerce's FMV calculation because Commerce had used the disputed methodology in its preliminary determination and plaintiff failed to raise its challenge until after issuance of the final determination); *see also* 28 U.S.C. § 2637(d) (1994) ("[T]he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.").

■ Miramonte also argues that even if Commerce's decision to adjust its production costs for inflation was correct, Commerce should not have applied four-month inflation adjustments to all of its production expenses.

> As the Department [Commerce] correctly finds, Miramonte reported that it takes one month to propagate a carnation cutting. This cutting is then planted and harvested three months later.... The way Miramonte reported costs ... was as follows. First, *propagation* costs were 'offset,' or shifted four months.... Second, *production* costs—by far the largest cost component ... were 'offset' *only three months.* Third, harvest costs were reported on a current basis and not offset at all.

Miramonte Comments at 14. Thus, Miramonte argues, "Commerce should apply a four-month inflation adjustment only to the propagation costs,.... It should apply a three-month inflation factor to the production expenses.... And no inflation adjustment

should be applied to harvesting costs. . . ." *Id.*

In response, Commerce explains that it applied the four-month inflation factor as partial BIA due to Miramonte's failure to respond appropriately to Commerce's supplemental questionnaire regarding inflation adjustments. This Court has already decided that Commerce's decision to resort to partial BIA was appropriate. *See Cultivos* at 1278–79 ("Commerce's finding that Miramonte failed to respond properly to its request for inflation adjustment data is supported by substantial evidence, and, accordingly, Commerce's application of BIA to adjust Miramonte's verified cost data for inflation was in accordance with law.").

■ However, the statute "[does] not explicitly define what type of information constitute[s] the 'best' information. Hence, because Congress has 'explicitly left a gap for the agency to fill' in determining what constitutes the best information available, the ITA's construction of the statute must be accorded considerable deference." *Allied–Signal Aerospace Co. v. United States*, 996 F.2d 1185, 1191 (Fed.Cir.1993). Furthermore, "[t]he best information 'is not necessarily accurate information, it is information which becomes usable because a respondent has failed to provide accurate information.' " *Krupp Stahl A.G. v. United States*, 17 CIT 450, 453, 822 F.Supp. 789, 792 (1993) (quoting *Asociacion Colombiana de Exportadores de Flores v. United States*, 13 CIT 13, 28, 704 F.Supp. 1114, 1126 (1989), *aff'd* 8 Fed. Cir. (T) 97, 901 F.2d 1089 (1990)).

■ "The purpose behind permitting Commerce to resort to BIA is to induce respondents to provide Commerce with requested information in a timely, complete and accurate manner so that the Department may determine current margins within statutory deadlines." *National Steel Corp. v. United States*, 18 CIT 1126, 1129, 870 F.Supp. 1130, 1134 (1994) (citing *Rhone Poulenc Inc. v. United States*, 8 Fed. Cir. (T) 61,

67–68, 899 F.2d 1185, 1191 (1990)). "Although the ultimate purpose of BIA is not to punish, BIA is intended to be adverse." *National Steel*, 18 CIT at 1132, 870 F.Supp. at 1136 (citing *Pulton Chain Co. v. United States*, 17 CIT 1136, 1139 (1993)). At the same time, Commerce's choice of BIA must be reasonable. "A rational relationship must exist between the 'data chosen and the matter to which they are to apply.' " *National Steel*, 18 CIT at 1132, 870 F.Supp. at 1136 (citing *Manifattura Emmepi S.p.A. v. United States*, 16 CIT 619, 624, 799 F.Supp. 110, 115 (1992)).

Here, Commerce adjusted information submitted by respondent using monthly inflation rates published by the Colombian government, basing its calculations on the actual production cycle of the merchandise at issue, as reported by respondent. Remand Determination at 9–12. Because Commerce relied on current, published information and on information provided by respondents in the instant investigation, the Court finds Commerce's calculated inflation adjustment rates bore a rational relationship to the actual effect of inflation on Miramonte's production costs.[4]

At the same time, the rate chosen by Commerce was appropriately responsive to the concern of petitioner, the Floral Trade Council, that the adjustment factor be "sufficiently adverse" and not reward Miramonte "for failing to provide accurate information in a timely manner." Floral Trade Council's Comments on Final Results of Redetermination Pursuant to Court Remand at 3. As Commerce explains,

Miramonte's reporting methodology is such that propagation and production costs require adjustments for four months' and three months' worth of inflation, respectively, while harvesting costs did not incur any inflation adjustment. As adverse BIA, we adjusted all three categories of costs for four-months' worth of inflation. If we applied a neutral form of BIA, we would

---

4. Miramonte also asks that the Court wait for the resolution of the inflation adjustment issue in *Asociacion Colombiana de Exportadores de Flores v. United States* before considering the remand results here. That case has now been decided.

*See* Slip op. 98–33 (March 25, 1998). Therefore, Plaintiffs' request is moot. Furthermore, the issue raised by Miramonte was decided in Commerce's favor.

have only adjusted production costs for three-months' worth of inflation and would not have adjusted harvesting costs at all. Remand Determination at 16. The Court finds that Commerce's BIA choice represents a reasonable attempt to balance the "rational relationship" requirement, with the purpose of inducing respondents to cooperate with Commerce. *See supra* Pg. 15.

### III. Imputed Credit Interest Rate

In the final results of the seventh POR, Commerce inadvertently used a prime U.S. dollar short-term borrowing rate of seven percent to impute U.S. credit expenses. Commerce requested that the issue be remanded to correct its error. Upon remand, Commerce substituted Miramonte's actual U.S. dollar short-term borrowing rate for the prime rate in calculating imputed U.S. credit expenses on seventh POR sales. No party challenges this correction, and Commerce's use of Miramonte's actual borrowing rate, in accordance with this Court's order in the underlying opinion, is affirmed.

### IV. Conclusion

In accordance with the foregoing opinion, the Court finds Commerce's Final Results of Redetermination Pursuant to Court Remand in *Cultivos Miramonte S.A. v. United States,* 21 CIT ——, 980 F.Supp. 1268 (1997) to be supported by substantial evidence on the agency record and in accordance with law.

### JUDGMENT

This case having been submitted for a decision and the Court, after due deliberation having rendered a decision herein; now in accordance with that decision, it is hereby,

ORDERED that the Final Results of Redetermination Pursuant to Court Remand in *Cultivos Miramonte S.A. v. United States,* 21 CIT ——, 980 F.Supp. 1268 (1997) is sustained in its entirety.